Bertram Harnett, J.
Dorothy and Robert Fordyce were separated eight years ago, but the alimony dispute left in the wake of that separation continues to toss. A chart of its course will focus some of the issues.
A 1966 separation decree awarded Dorothy $275 per week as alimony and $75 per week as support for the couple’s then living son. Apparently, Robert met these payments at first, but then began to fall behind. He complained of financial inability. An order entered October 2, 1972 in part reduced the alimony prospectively to $150 per week. The son having earlier died, his support was terminated. The Appellate Division affirmed the alimony reduction (43 AD2d 839) but despite this, Robert fell further into arrears.
Dorothy’s motion to enter a money judgment for the arrearages pursuant to section 244 of the Domestic Relations Law resulted in a stipulation permitting her to enter judgment for $29,175, the amount of arrears due through March 19, 1973. That judgment was entered on November 1, 1973, and after a later challenge by Robert, was sustained by an order entered January 7, 1974.
With indifferent success, Dorothy has sought invocation of the court’s contempt power to force Robert to pay the alimony. She now seeks to enforce her right to support by sequestration and garnishment.
Dorothy presently lives on a large estate, but it is heavily mortgaged and apparently in danger of foreclosure. The rents she collects there are entirely used to pay the expenses of maintaining the property. As a practicing lawyer, she earns approximately $13,000 yearly. Robert was unable to prove any other income for her. Dorothy is age 57, her health is not good, and her practice income and prospects seem to be declining.
Robert owns little property, save for a painting valued at between $1,000 and $7,000. A former airplane pilot, he is entitled to a monthly retirement pension from Pan American World Airways. In 1974, this monthly payment was $983.61; this year it will be less because of variable features in the plan itself. He is also entitled to $267 monthly Social Security benefits. He had been an employee, shareholder and moving force, of Fordyce, Andrews and Haskell, Inc., an employment agency, but he is now unemployed. Dorothy was unable to prove any other income for him, although correspondence to this court indicates he does receive unemployment insurance. *911 Robert’s health seems excellent, and his failure to have any employment income seems rooted more in a lack of desire than a lack of capacity. While he is 66 years old, his demeanor is vigorous and reflects capability and vitality. In 1969 he married a 26-year-old woman employed as a model, but the court has been informed since the close of these hearings she died suddenly and unexpectedly. Both Robert and Dorothy are now unmarried, and they have two grown daughters who are financially independent of them.
Dorothy has served a restraining notice on Pan American (CPLR 5222), tying up Robert’s pension fund interest, and now wants: (a) to attach both the principal and income of the pension fund, or to sequester them; (b) security for payments of future alimony; (c) a money judgment for the arrears since the terminal date of the last judgment; (d) installment payments on the judgments; (e) to garnish Robert’s presumed salary from Fordyce, Andrews and Haskell; (f) to sequester his stock in Fordyce, Andrews and Haskell; and (g) counsel fees.
Robert claims he needs all his income just to survive in a reasonably modest manner. He seeks: (a) reduction of the alimony; and (b) lifting of the restraining notice on the pension fund.
Time and circumstances have resolved some of these issues. Robert has resigned from Fordyce, Andrews and Haskell and on the face of things no longer receives any salary or other compensation from them subject to wage assignment under section 49-b of the Personal Property Law. His shares in the corporation were attached and sold by the sheriff. His current financial straits, as reflected in the proof, make it unreasonable to ask him to give any security for alimony payments. The request for installment payments is academic as this decision will otherwise account for all of Robert’s known assets of value and known income.
The heart of the problem before the court concerns Robert’s entitlements from the Pan American Fund and Dorothy’s ability to reach it. Actually, four distinct plans compose this fund:
I. Cooperative Retirement Income Plan (CRIP). Pan American and Robert Fordyce contributed to this plan as required by a labor contract. The plan simply pays a fixed $108.34 monthly benefit for life.
II. Pan American Pilots Plan — composed of two trusts. (1) "A” Trust. Pan American and Robert Fordyce contributed to *912 this plan, too, as required by the labor contract. This plan also pays a fixed monthly benefit for life, but of $382.16. (2) "B” Trust — composed of two sub-parts, (i) "Regular B”. Pan American and Robert Fordyce again contributed here as required by the labor contract. This plan pays a variable amount monthly dependent upon the yield of trust investments. There is a relatively small lump sum death benefit to a designated beneficiary, (ii) "Supplemental B”. Here, Robert Fordyce made voluntary contributions from his salary. Pan American made no contribution. This plan, too, pays a variable amount monthly dependent upon the yield of trust investments. Here, there is a more substantial death benefit payable to a designated beneficiary.
The legal problems in the creditor availability of these fund payments are most complex. For analytical purposes they are best considered in the classifications of principal retained, and benefits payable each month.
I. Principal Retained
A. None of this principal may be seized by Dorothy during Robert’s lifetime
Under all these plans, Robert is entitled to receive monthly installments, but he has no right to further distribution of any part of the principal during his lifetime. Only under the sub-parts of the "B” Trust is there his right to designate beneficiaries of death benefits.
The principal was amassed from three sources: (1) Pan American’s required payments; (2) Robert’s required payments; and (3) Robert’s voluntary payments. Robert never had a right to directly receive Pan American’s contributions. He had no right to receive back his own contributions, whether required or voluntary. He receives only the stipulated fixed installments, and the variable income components.
As a judgment creditor, Dorothy can reach "any debt, which is past due or which is yet to become due, certainly or upon demand of’ Robert. (CPLR 5201, subd. [a].) Or, she can reach "any property which could be assigned or transferred”. (CPLR 5201, subd. [b].) But, the contributions of the principal of all four parts of the fund will never be a debt due to Robert, and he has no interest in that principal which he can transfer or assign, except for the death benefit designation which we shall discuss below.
*913 Sequestration also fails. Even the compelling claim of a wife for alimony and support cannot reach a property interest unavailable to her husband. (Rosenberg v Rosenberg, 259 NY 338.)
Under ordinary circumstances, a person may dispose of his property however he sees fit, and leave subsequent creditors without recourse. (Schenck v Barnes, 156 NY 316.)
1. “Self-Settled” Trusts and Retained Interests.
But Dorothy claims that her husband’s contributions to the pension funds were “self-settled”, that they were voluntarily made by him to a trust of which he was the beneficiary, and that his transfer to the trusts were void as against the claims of creditors. (Schenck v Barnes, supra; EPTL 7-3.1.) In a sense she relies on the self-settlement concept which is the test as to whether a trust is creditor exempt under CPLR 5205 (subd. [d]).
However, the CRIP Fund and the Pilot’s Plan "A” and “Regular B” Funds are in no event self-settled trusts. They are creatures of the collective bargaining agreement between Pan American and its pilots; they are maintained for the purpose of providing retirement income; they are wholly funded by required employer and employee contributions. (See Laborers Union Local 1298 v Lyon & Sons, 66 Misc 2d 1042.) They are voluntary only in the sense that continued employment by Robert with Pan American was his own voluntary act.
By contrast,' the “Supplemental B” Fund is a self-settled trust. Pan American makes no contributions. An employee’s contributions are entirely voluntary, up to 10% of his salary. Here, the employee on his own puts aside property for his own use later. The contributions are largely unrelated to his labor. Pan American is merely a conduit for this investment; its presence is not significant.
But, Dorothy is not entitled to the retained principal of this “Supplementary B” Fund either. Because a trust does not fall within the exemption definition of CPLR 5205 (subd. [d]) does not mean it is necessarily reachable by creditors. As noted above, Robert has no interest in that principal. Even in the case of a self-settled trust, creditors can only reach the interest the settlor retained for himself. Dillon v Spilo, 250 App Div 543, affd 275 NY 275; Colgate v Guaranty Trust Co. of N. Y., 159 Misc 664.)
*914 2. Transfer in Fraud of Creditors.
The issue of a transfer to defraud creditors which might make all the principal available has not been raised. Indeed, Robert is not charged with falling into arrears until 1970, over a year after he retired and stopped contributing to the pension plans.
B. Robert’s right to designate death beneñt beneñciaries — left open
There may, however, be some principal ultimately reachable by Dorothy, and she may have some right to move now for future protection. This lies in the death benefit of the "B” Trusts. There may be an interest here which Robert has retained. Unfortunately, the parties did not address themselves to this point, and the court feels that on the record presented it cannot adjudicate it. We would have to know Robert’s precise rights on the date shown to be effective to designate beneficiaries, as well as his ability to designate his own estate or creditors. Are there effective restraints on its alienation? Moreover, it is not clear whether this death benefit is part of the trust itself or the result of some ancillary and divisible insurance arrangement. There are other questions.
Accordingly, the court does not rule on Dorothy’s right to move against the death benefits as retained interests of Robert’s. Any of the parties are left to seek such further relief as they may wish to establish on this score.
II. Benefits Payable —- Dorothy May Reach Part According to the Mutual Needs
Robert seeks to keep all the benefits for himself noting that the terms of the pension plans themselves prevent their use to pay debts or other liabilities.
But, creditor availability provisions of retirement plans are pre-empted by statute. (Matter of Sand v Beach, 270 NY 281, 286.)
A. CPLR 5205 and family needs
CPLR 5205 (subd. [e], par. 1) shields up to 90% of the "income or other payments” of otherwise exempt trusts from the reach of creditors when that income is necessary "for the reasonable requirements of the judgment debtor and his family”.
However, this will not shield the income to Robert from the *915 CRIP, "A” and "B” Regular Trusts. The point of the exemption is to foster the support of the family by protecting necessary money from the grasp of outsiders; it is not to help one member of the family avoid his obligation to support the others. Statutory exemptions of this general variety and those exemptions designed to protect the income of specific governmental pension plans have yielded to claims for alimony and child support. (Wetmore v Wetmore, 149 NY 520; Weigold v Weigold, 236 App Div 126; Pickei v Pickei, NYLJ, Nov. 19, 1973, p 19, col 2) The pension money is for the use of both husband and wife, and this applies to beneñt installments regardless of the accounting concept of principal and income components in any one payment. (CPLR 5205 subd. [e], par. 1; see Laborers Union Local 1298 v Lyon & Sons, supra.)
The spendthrift provisions of the plan echo this design. They provide that if an attempt is made to alienate the benefits, the trust’s administrative board may redirect payment to the employee’s family rather than the employee.
B. The Income of the "Supplemental B” Fund is Entirely Susceptible to Dorothy’s Thrust
As discussed above, Supplemental B is a self-settled trust and whatever interest the settlor holds out for himself is available to his creditors. Here, that is the installment payout, as made, and possibly the death benefit as discussed above. Of course, this attachment susceptibility is subject to judicial discretion in terms of Robert’s need to sustain himself. By its terms, the exemption of CPLR 5205 (subd. [e], par. 1) offers no protection in the case of self-settled trusts.
Having noted above the principles with respect to availability of principal and income of the Pan American Retirement Fund, we now consider the amount of alimony and conclude that it must be reduced in keeping with Robert’s reduced financial means.
In September 1972, when Mr. Justice Derounian fixed the alimony at its present level, $150 per week, Robert was still associated with Fordyce, Andrews and Haskell. Although at that time Robert claimed only a minimal income from that venture, the court was apparently skeptical. It concluded, "[D]efendant’s style of living belies his claim of near poverty”.
Since then, he has left Fordyce, Andrews and Haskell. He has curtailed his international travel and membership in expensive social clubs which fostered the court’s skepticism.
*916 Considering these and the factors previously discussed as they reflect on Dorothy’s needs and Robert’s ability and willingness to provide, the alimony award is modified to $300 per month, applied retroactively as of January 31, 1974, the date on which Robert resigned from Fordyce, Andrews and Haskell.
The court will order entry of a money judgment for the . alimony arrears from March 19, 1973, the concluding date of the previous judgment, to December 31, 1974.
The parties are requested to submit proposed judgments, on notice to the other, establishing the proper amounts. These judgments should contain a provision that of the pension fund installments payable in any month, Dorothy will be entitled to receive $400 credited to Robert’s account by Pan American. The fund will be notified and act accordingly. The $100 monthly in excess of alimony shall be applied first to legal fees due Dorothy from Robert, and the balance to alimony arrears. These calculations consider that the return from all four plans for 1975 is expected to be approximately $800 per month. Should Robert’s income vary significantly, either will be able to move to review and revise the provisions prescribed here.
In fixing that part of the fee for Dorothy’s attorney, which Robert should bear, the court must consider the means of each. Robert’s share of Dorothy’s counsel fee is therefore fixed at $1,500, exclusive of disbursements. Pan American apparently has accumulated some pension income under the restraining order, although some of this money has been paid out pursuant to subsequent stipulations and court orders. What funds are left as of February 28, 1975 shall be paid to Dorothy. They shall be applied first to paying Robert’s share of Dorothy’s counsel fees and any excess shall be applied to the alimony arrears.