OPINION OF THE COURT
Jack Turret, J.
The issue here involves whether child support payments can be enforced by the sequestration of the father’s benefits under his annuity contracts with the College Retirement and Equities Fund (CREF) and the Teachers Insurance and Annuity Association of America (TIAA). These corporations moved this court to vacate and modify an order of sequestration in a support proceeding.
On June 18, 1978, petitioner commenced a proceeding to declare respondent the father of her three children and for an order of support. Judge Richard D. Huttner (Family Court, New York County) signed an order of filiation on July 10, 1978, declaring respondent the father of the children and payment of $139 per week for their support. In late October, 1978, petitioner again came before this court on respondent’s failure to comply with the order of support. Since respondent had departed from this State for Massachusetts (apparently in July, 1977) Judge Phillip Thurston (Family Court, New York County, now retired) made an order of sequestration pursuant to section 457 of the Family Court Act. The order applied to the annuity contracts which respondent had with TIAA and CREF and required those corporations "to remit to petitioner out of the proceeds, income, cash surrender value, corpus or equity of respondent, in the annuity contracts the sum of $139.00 weekly”.
On January 31, 1979, CREF and TIAA moved this court to modify or vacate the sequestration order insofar as it affected respondent’s annuity contracts with CREF and TIAA. Petitioner opposes that motion and prays that this court: (a) deny the motion; (b) order all moneys due and owing be paid; and (c) require respondent to exercise an option he possesses to advance the starting date of the CREF annuity (and presumably, allow the sequestration of the proceeds).
The corporations’ motion is based on subdivision 3 of section 166 of the Insurance Law and on Alexandre v Chase Manhattan Bank (61 AD2d 537). They argue that these authorities *697 preclude the court from sequestering the benefits of the annuity contracts of respondent. Petitioner asserts that those contracts can be attached. She relies on section 166 (subd 3, par [b]) of the Insurance Law (an exception to the rule of subdivision 3 of section 166) and urges that the rule of law expressed in Alexandre v Chase Manhattan Bank (supra) is inapplicable here.
Respondent’s status differs as to each annuity contract. Payments under the TIA A contract had commenced on January 1, 1978, while the benefits under the CREF contract will begin in September, 1994. Since each annuity possesses special characteristics, and inasmuch as the arguments of each party differ regarding each annuity, they are treated separately. The arguments of petitioner and the corporations were carefully considered. (Since Judge Thurston no longer sits in this court at Intake B [the motion part] this Family Court Judge possesses authority to review and of necessity vacate or modify the order [CPLR 2221, Judiciary Law, § 7-a].)
I. It is the ruling of this court that the order of sequestration of October 31, 1978 be modified so as to delete all reference to the CREF annuity.
CREF is a nonprofit corporation created by a statute (L 1952, ch 124) which provides, inter alia: "No money or other benefit provided or rendered by the corporation hereby formed * * * shall be subject to assignment or pledge, or be liable to attachment, garnishment, or other process, or be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of any such person”. (See L 1952, ch 124, § 9.)
The annuity contract between respondent and CREF provides for a starting date of September 1, 1994 and the respondent has an option to advance or delay such date. Premiums are paid in by or on behalf of the respondent and, under the terms of the CREF certificate, respondent has no right to withdraw any premiums paid in; they cannot be assigned, pledged or borrowed against and do not represent any cash surrender value for respondent. CREF possesses no moneys, funds, assets or properties of respondent; and nothing of value is presently due respondent.
Petitioner seeks an order compelling respondent to exercise his option to accelerate the annuity starting date (presumably, if granted, she would attempt to sequester the benefits being paid thereunder). This request must be denied as this court is *698 constrained to follow Alexandre v Chase Manhattan Bank (supra). That case involved a similar attempt to force the annuitant to advance his CREF or TIAA annuity’s starting date in order to sequester the benefits. The Appellate Division refused to compel the acceleration of the date. That court also held that the accumulated premiums being held by the corporations were beyond the reach of the petitioner. (See, also, Fordyce v Fordyce, 80 Misc 2d 909.)
Were the court to order advancement of the starting date, we would be powerless to sequester any benefits paid to respondent under the CREF annuity given the clear and unambiguous legislative intent set forth in the CREF enabling statute. In light of Alexandre v Chase Manhattan Bank (supra), and the CREF enabling statute, petitioner cannot reach the CREF annuity.
Petitioner argues that subdivision 3 of section 166 of the Insurance Law sets forth an exemption in paragraph (b) which would permit the court to rule in her favor. The Legislature, in the CREF enabling statute, clearly mandated that CREF benefits may not be sequestered. This statute, relating specifically to the CREF contract, takes precedence over the general language of section 166 (subd 3, par [b]) of the Insurance Law. Also, nothing in that section of the Insurance Law subverts the holding of the Alexandre case (supra).
Not only must petitioner’s request be denied, but the corporation’s motion must be granted as to the CREF annuity. The sequestration order must be modified to exclude reference to the CREF annuity since: 1. the accumulated premiums lie beyond petitioner’s reach (see Alexandre v Chase Manhattan Bank, 61 AD2d 537, supra); 2. the starting date of the CREF annuity cannot be advanced by court order (see Alexandre v Chase Manhattan Bank (supra); and 3. all benefits under the CREF annuity are immune from sequestration (see the CREF enabling statute).
II. The order of sequestration of October 31, 1978 regarding the TIAA annuity contract will stand, subject to the directions hereinafter made.
The annuity contract between respondent and TIAA presents different issues. Unlike CREF, TIAA was not created by a special act of the New York Legislature. TIAA functions are guided by the Insurance Law. Further, respondent elected to advance the TIAA annuity starting date and monthly payments began on or about January 1, 1978.
*699 The annuity amount which respondent presently collects stands at $144.26 monthly and is comprised of two elements: a guaranteed amount ($71.58) and an additional dividend amount ($72.68). The latter is a variable amount which is not guaranteed to respondent, and is determined by the TIAA board of trustees.
The TIAA annuity contract, provides, inter alia: "Protection against claims of creditors: The benefits rights, and privileges accruing to the annuitant * * * will not be transferable or subject to surrender, commutation or anticipation * * * To the extent permitted by law annuity and other benefit payments will not be subject to the claims of any creditor of the annuitant * * * or to legal process.”
Attention will first be given to TIAA’s more general arguments:
A. TIAA asserts that since its annuity contract states that the benefits thereunder are immune to the claim of creditors or to legal process, such benefits cannot be sequestered. Where similar exemption provisions have been found in pension contracts (i.e., where the pension contract provides that its payments are not subject to sequestration) the courts have consistently subjected those pension contracts to sequestration —notwithstanding any exemption section — in order to permit enforcement of a parent’s obligation to support a child. (Matter of M. H. v J. H., 93 Misc 2d 1016; see, also, Matter of Michel v Michel, 86 Misc 2d 774.) The TIAA contract herein is not a pension contract per se. The provisions of and payments under, the TIAA contract closely resemble those of a pension agreement and the same rule should apply. Exemption provisions of pension contracts do not enjoin a court from sequestering payments under the pension plan where the court’s goal is to secure funds for the support of the children of the pensioner. The provisions in the TIAA contract do not preclude the court from attaching the annuity payments given by TIAA. The purpose is the application of funds for the support of respondent’s offspring. See Matter of J. H. v M. H. (supra); Cogollos v Cogollos (93 Misc 2d 406) and cases cited therein. See, also, Fordyce v Fordyce (supra), where the court refused to accept a claim that trust assets were not amenable to sequestration because the terms of the agreement prevented it.
B. Alexandre v Chase Manhattan Bank (61 AD2d 537, supra) is not authority to enjoin sequestration of the TIAA *700 payments. Alexandre v Chase Manhattan Bank (supra) is distinguishable on its facts from the instant case. There, an attempt was made to obtain accumulated premiums and advance the annuity’s starting date. No benefits were due or being paid under the TIAA or CREF annuity in Alexandre v Chase Manhattan Bank (supra). Payments in the instant case are in fact being paid under the TIAA annuity. The court’s decision in Alexandre concerns the situation where benefits are not being paid out. The Appellate Division (First Department) did not state or imply that actual payments from the TIAA contracts, once due, were immune from process. The facts here clearly and materially differ from those in Alexandre.
Applicable to the issues herein is subdivision 3 of section 166 of the Insurance Law which provides:
"The benefits, rights, privileges and options which, under any annuity contract, heretofore or hereafter issued are due or prospectively due the annuitant, who paid the consideration for the annuity contract, shall not be subject to execution nor shall the annuitant be compelled to exercise any such rights, powers or options contained in said annuity contract, nor shall creditors be allowed to interfere with or terminate the contract, except * * *
"(b) that the court may order such annuitant to pay to a judgment creditor or apply on the judgment, in installments, such portions of such benefits, as to the court may appear just and proper, after due regard for the reasonable requirements of the judgment debtor and his family * * * as well as any payments required to be made by the annuitant to other creditors under prior court orders.”
TIAA claims its annuity is governed by subdivision 3 of section 166 of the Insurance Law; therefore the payments to the respondent under the TIAA annuity are not subject to sequestration. Further, TIAA argues that paragraph (b) of subdivision 3 of section 166, the exception, is not applicable to the facts herein because that section: 1. speaks of a judgment creditor and petitioner herein has not received a judgment and is not a judgment creditor; 2. requires the court to order "such annuitant” (i.e., respondent) to pay the judgment creditor and since respondent is the "annuitant” the court should order him to pay the annuity benefits to the petitioner; and 3. impels the court to have due regard for the reasonable re *701 quirements of the judgment debtor prior to sequestering an annuity, and the Family Court neglected to do so.
The court cannot agree with TIAA’s construction of the statute. While the general rule is that annuity payments cannot be sequestered, the court finds that the facts herein are sufficient to allow the exception to the rule, set forth in paragraph (b) of subdivision 3 of section 166, to apply. The payments under the TIAA contract can be sequestered. A strong and clear public policy leads the court to this ruling.
The public policy of this State requires that a father provide for the support of his children. Matter of Quat v Freed (25 NY2d 645, 646): " 'The fact that the children had this fund [a trust fund in their name] effects no diminution of the father’s primary obligation to support his children [citation omitted]’ ”. Laumeier v Laumeier (237 NY 357, 364): While the husband divorced his wife "[t]he husband did not divorce his child, or dissolve his liability to it. * * * The child is entitled to the support and maintenance by its father. If the father fails to support his child and furnish the necessaries to keep it alive, that is, fail and refuse to give it a home, food and clothing, education and medical attendance * * * he will be liable for it.” Matter of Jesmer v Dondon (29 NY2d 5, 10, app dsmd 404 US 953): "[I]t was not unreasonable to impose the obligation of support upon the father of a boy institutionalized by the juvenile court [County of Alameda v Espinoza, 243 Cal App 2d 534, 538]”. Hirsch v Hirsch (37 NY2d 312, 315): "Notably, in matrimonial cases, public policy considerations abound: viz. * * * parents are chargeable with the support of their children”. Pickering v Pickering (58 AD2d 1039): "A man has a continuing obligation to support his wife and children according to his means (Family Ct Act, §§ 412, 413)”. Schleimer v McMillan (54 AD2d 701, 702): "It is clear that appellant [father] has a legal obligation to support his family to the extent to which he is able.” Robbins v Rubin (42 AD2d 560): "[T]he extent of a father’s obligation to support his children is measured by his means as well as the child’s needs.” Drazin v Drazin (31 AD2d 531, 532): " 'Regardless of the mother’s financial resources the primary duty of support rests on the father [citation omitted]’ ”. Siegal v Hodges (15 AD2d 571, 572): "The parents of an infant have a legal and moral obligation to support him, the duty resting primarily on the father and secondarily on the mother”. (See, also, Matter of M. H. v J. H, 93 Misc 2d 1016, supra; Cogollos v Cogollos, 93 *702 Misc 2d 406, supra; and Feingut v Feingut, NYLJ, Feb. 13, 1979, p 15, col 6.)
This public policy manifests itself in various statutes. Section 413 of the Family Court Act: "The father of a child * * * is chargeable with the support of his child and, if possessed of sufficient means or able to earn such means, may be required to pay for such child’s support a fair and reasonable sum”. (See, also, Family Ct Act, § 234 (subd [b]); §§ 415, 443, 461.) Section 32 of the Domestic Relations Law: "For purposes of this article, the following persons in one state are declared to be liable for the support of dependents * * * and, if possessed of sufficient means or able to earn such means, may be required to pay for such support a fair and reasonable sum * * * (2) Father liable for support of his child or children under twenty-one years of age”. Subdivision 1 of section 101 of the Social Services Law: "Except as otherwise provided by law, the * * * parent of a recipient of public assistance or care or of a person liable to become in need thereof * * * shall be responsible for the support of such person, provided that a parent shall be responsible only for the support of a child under the age of twenty-one years.” Section 260.05 of the Penal Law: "A person is guilty of non-support of a child when, being a parent, guardian or other person legally charged with the care or custody of a child less than sixteen years old, he fails or refuses without lawful excuse to provide support for such child”. (See, also, Bankruptcy Act, US Code, tit 11, § 35, subd [a], par [7]; EPTL 7-1.5, subd [d]; Personal Property Law, § 49-b.)
The compelling interest of the community to require a father to provide support for his children and to comply with a valid support order impels the court to construe section 166 (subd 3, par [b]) liberally and rule that the exception provided in that section applies for the benefit of this petitioner. She must be able to proceed under section 166 (subd 3, par [b]) to sequester the payments under the TIAA annuity so that the order of support can be complied with. The statute was not intended to defeat a child’s right to support from these annuity payments, nor was it to preclude a court from securing compliance by the annuitant with a valid order of support. TIAA’s strict and technical interpretation of the statute, forcing fine distinctions clearly not intended by the Legislature in regard to a support proceeding, are rejected.
The sequestration order requires some modification as to the *703 TIAA annuity. The monthly guaranteed amount of $71.58 is to be paid over directly to the petitioner by TIAA. The additional dividend amount, variable in nature, should be paid to petitioner by TIAA whenever it is determined that said dividend would have been payable to respondent but for the order of sequestration. All TIAA amounts receivable by respondent, including the $71.58 guaranteed payment, are subject to sequestration to the extent of $139 per week.