In re Ronald Leroy COLSDEN, et al., Debtors.

A. Frank BARON, Trustee, Plaintiff–Appellee,

v.

MOORMAN MANUFACTURING COMPANY, et al., Defendants–Appellees.

Nos. C 87–4039, C 87–4086.

United States District Court, N.D. Iowa, W.D.

April 14, 1988.

John Harmelink, Yankton, So. Dak., for Ronald and Ruth Colsden.

A. Frank Baron, Sioux City, Iowa, trustee.

Monte Schatz for trustee.

Thomas Carney, Chicago, Ill., and David L. Baker, Cedar Rapids, Iowa, for Moorman Manufacturing.

### ORDER

O'BRIEN, Chief Judge.

Debtors Ronald and Ruth Colsden and the Employees Profit Sharing Trust of Moorman Manufacturing Company appeal from orders entered by the Bankruptcy Court for this district treating Ronald Colsden's interest in a profit-sharing plan as property of the bankruptcy estate, thereby permitting it to be distributed to creditors as an asset. These appeals, now consolidated, involve the scope of the Eighth Circuit Court of Appeals' ruling in *In re Graham*, 726 F.2d 1268 (8th Cir.1984), that ERISA-qualified plans do not fit within § 541(c)(2)'s exception to the definition of "property of the estate", and raise the question of whether *Graham* applies in a case in which the parties have stipulated that the plan is a spendthrift trust. The legislative history of § 541(c)(2) indicates that the exception was intended to apply to spendthrift trusts. For this reason, the stipulation takes the case out of the scope of the *Graham* decision and compels a different outcome. The Court therefore rules that Mr. Colsden's interest is not a part of the bankruptcy estate, and the Bankruptcy Court's rulings to the contrary are reversed.

---

This case involves important provisions of two major federal statutes with divergent purposes—the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a) (1976), and the Bankruptcy Code of 1978, 11 U.S.C. § 541(a), (c) (1982). Section 1056(d) of ERISA (and § 401(a) of the Internal Revenue Code) require that qualified plans must contain a clause prohibiting the alienation or transfer of a party's interest in receiving payments from the plan. The antialienation clauses in the plan and trust agreement involved here contained no exceptions (*see* § 10.03, Exhibit 4 at 13; § 11.01; Exhibit 5 at 21). A primary function of the Bankruptcy Code, by contrast, is to facilitate the orderly transfer of the assets of the debtor to those with allowable claims against it. Under the new Code, unlike the old Act, the initial determination of whether a debtor may keep an asset generally depends upon whether that asset falls within an exemption, and not upon whether the asset should be treated as part of the bankruptcy estate in the first place. Thus, the definition of the bankruptcy estate in § 541 is all-encompassing, and with a few exceptions, "includes as property of the estate all property of the debtor, even that needed for a fresh start." S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted at 1978 U.S.Code Cong. and Admin.News 5787, 5868.

It is now well-established that a debtor cannot rely solely upon ERISA in order to keep his interest in a qualified plan from being treated as property of the estate. ERISA specifically provides that its provisions were not to affect the operation of other federal statutes. *See* 29 U.S.C. § 1144(d). To do so would constitute a return to the pre-Code approach Congress abandoned under which the inclusion of an asset within the estate varied in accordance with an individual examination of the legal nature of the asset and in light of the purposes of the old Act. *In re Goff,* 706 F.2d 574, 578 (5th Cir.1983).

Instead, debtors have invoked the seemingly broad language of one of the few exceptions to the Code's broad definition of the bankruptcy estate. This exception is embodied in § 541(c)(2), and states:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this file.

Debtors in other cases have argued that this reference to "applicable nonbankruptcy law" was intended to preserve the effect of restrictions on transfer recognized in federal statutes such as ERISA as well as traditional state trust law. *See Goff,* 706 F.2d at 580; *Graham,* 726 F.2d at 1271. If § 541(c)(2) means that the restrictions are effective, then the restricted assets cannot become a part of the bankruptcy estate, and must remain with the debtor and the plan. However, in *Goff, Graham,* and several other cases, courts have rejected this argument because it conflicts with a functional reading of the Code. As the *Graham* court explained "Pension benefits are specifically treated under the Code's *exemption* provision, clearly indicating that they were intended and assumed to be part of the estate." 726 F.2d at 1272 (emphasis in original). In determining what *would* fit within the § 541(c)(2) exception if an ERISA-qualified plan would not, the *Graham* and *Goff* courts looked to the exception's legislative history, which states that the section "continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent that the trust is protected from creditors under applicable state law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted at 1978 U.S.Code Cong. and Admin.News, 5787, 6136. *Accord* H.Rep. at 369, S.Rep. at 83, 1978 U.S.Code Cong. and Admin.News at 5869, 6325.

In *Graham,* the Eighth Circuit did not explore whether the profit-sharing plan involved there could be described as a spendthrift trust; it assumed it could not be. The Bankruptcy Judges of this district have interpreted the *Graham* court's silence as an indication that ERISA-qualified plans simply cannot qualify for the exception. *See In re McKenna,* 58 B.R. 221 (Bankr.N.D.Iowa 1986); *In re Colsden.* However, in *Goff,* the Fifth Circuit paused

to consider whether a self-settled Keogh plan could be a spendthrift trust, and found that under Texas law, self-settled and revokable trusts could not qualify. However, the *Goff* court did not draw a bright line between ERISA plans and spendthrift trusts, but noted "without passing upon the exact limits of plans which could properly be characterized as spendthrift trusts," that "the employer-created and controlled nature of those plans may well make them analogous to a spendthrift trust." 706 F.2d at 589.

In this case the trustee agreed long ago (perhaps improvidently) to stipulate that the plan was a spendthrift trust. (Exhibit 3 at page 1.) The Eighth Circuit recently recognized that it "stands firm in its position that stipulations of fact voluntarily made and fairly entered into are controlling and conclusive and courts are bound to enforce them." *Skeets v. Johnson,* 816 F.2d 1213, 1215 (8th Cir.1987) (en banc) (accepting plaintiff's stipulation that he was an employee-at-will). Because the Court must enforce the stipulation that this was in fact a spendthrift trust, the only question left to decide is whether *Graham* requires it to treat this fact as legally irrelevant because this spendthrift trust was also an ERISA-qualified plan.

There is no clean, perfect answer to this question. The legislative history of § 541(c)(2) directs the Court's attention to the spendthrift trust aspect of the plan, but the *Graham* court's functional approach suggests that the Code would be most coherent if all pension plan interests were included into the estate and evaluated as potentially exempt assets.

This Court believes it should read the words of the Code's drafters, as captured in the legislative history, before attempting to read their minds through the type of functional analysis used in *Graham.* Because the legislative history of § 541(c)(2) is of little help in deciding whether a nonspendthrift trust should be included in the estate, the *Graham* court had no choice but to choose the second approach. However, in a case in which the plan is a spendthrift trust, the legislative history is conclusive, and the Court must rule that an interest in the plan cannot become a part of the bankruptcy estate.

Because the Court so rules, it need not address the second issue raised by the Plan concerning its duty to immediately turn over pension plan funds to the trustee.

IT IS THEREFORE ORDERED that the rulings of the Bankruptcy Court are reversed, and this matter is remanded to the Bankruptcy Court for further proceedings consistent with this decision.