**In re Daniel Patrick MONTGOMERY, Debtor.**

**Bankruptcy No. L88–00313C.**

United States Bankruptcy Court, N.D. Iowa.

June 8, 1989.

Joseph C. Johnston, Iowa City, Iowa, for debtor.

William D. Martin, Cedar Rapids, Iowa, Trustee.

MEMORANDUM AND ORDER Re: *Trustee's Objection to Exemption*

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is the Trustee's Objection to Property Claimed as Exempt. The Trustee is attempting to reach the Debtor's interest in annuity contracts.

The Debtor contends that the annuities constitute "spendthrift trusts" under applicable nonbankruptcy law, and therefore should be excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Alternatively, the Debtor claims that if the annuities do not constitute a valid spendthrift trust under applicable nonbankruptcy law, then while they would be considered estate property, they should be exempted from the estate pursuant to Iowa Code § 627.6(8)(e).

BACKGROUND

On February 26, 1988, the Debtor filed a Chapter 7 bankruptcy, listing an annuity plan as exempt. The Debtor has an interest in a Teachers Insurance and Annuity Association of America annuity contract, and a College Retirement Equities Fund unit-annuity certificate (TIAA/CREF), both payable upon retirement. On April 18, 1988, the Trustee filed an Objection to Property Claimed as Exempt arguing that the annuity plan is "ERISA qualified,"[1] and therefore included as property of the Debtor's estate.

The Debtor is currently employed as a painter at the University of Iowa. As of the date of filing his petition, the Debtor had worked for the University for approximately twelve years. As a condition of his employment, the Debtor was required to participate in a mandatory University sponsored employee retirement program.[2] The retirement program was established by the University for the benefit of its employees. The contributions to the annuity plan made by the Debtor were done pursuant to the requirements of the retirement program. The University's contributions to the annuity plan, made in lieu of salary, were also done pursuant to the terms of the retirement program. The annuity plan and the retirement program do not allow the Debtor access to the funds, or to exercise any

---

**1.** Employee Retirement Income Security Act of 1974; for ERISA qualifications, *see generally* 29 U.S.C. § 1056 and 26 U.S.C. § 401.

**2.** The provision of the University of Iowa Retirement Programs and Refund Policy that mandates participation states:

In addition to Federal Social Security, every staff member (except students) with an appointment of more than six months *must participate* in a retirement program. (Emphasis added).

*See* Exhibit 5, PART I.

dominion or control over the annuity plan assets. Since the Debtor has participated in the retirement program for more than five years, he is barred by the University of Iowa Retirement Program from receiving any money from the annuity plan until the date of his retirement. The present value of Debtor's interest in the annuity plan, accumulated as of February 26, 1988, was $54,056.58.

## DISCUSSION

■ In order to determine whether the asset in question can be reached by the Trustee, it is first necessary to determine whether the Debtor's interest in the annuity plan is property of the estate. The interest of a debtor in an ERISA qualified pension plan is included in the bankruptcy estate unless the plan qualifies as a spendthrift trust under state law. *See Baron v. Moorman Mfg. Co. (In re Colsden)*, 105 B.R. 500 (N.D.Iowa 1988) (interpreting *In re Graham*, 726 F.2d 1268 (8th Cir.1984)).

Section 541(a)(1)[3] provides, with exception, that the commencement of a case creates an estate "comprised of all legal or equitable interests" of the debtor as of the commencement of the case. The exception to the broad inclusive scope of § 541(a) is set forth in § 541(c)(2), which states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

If the annuity plan can be excluded from the bankruptcy estate, pursuant to the exception provided by § 541(c)(2), then our inquiry is at an end. If the annuity plan does not fit within the exception provided by § 541(c)(2), then our inquiry shifts to ascertain whether the annuity plan comes within any applicable exemption. *See Bar-*

*on v. Moorman Mfg. Co. (In re Colsden)*, 105 B.R. at 501.

Since this case was submitted to the Court for decision, the Eighth Circuit has decided another retirement plan case, *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121 (8th Cir.1989). The *Swanson* case involved a teachers' retirement plan created by the State of Minnesota, and hence was governed by Minnesota law. Funds in that plan were accumulated through mandatory employee and employer contributions. Membership in the plan was a condition of employment for every public school teacher who was covered by the plan. *Swanson*, 873 F.2d at 1122. The "restriction on the transfer of a beneficial interest of the debtor" in the Minnesota plan was provided for by a Minnesota statute which contained many substantive restrictions on the right of a teacher to assign or transfer that teacher's interest in the plan. Further, the Minnesota statute provided that "[a]ll monies to the credit of a teacher's account in the fund * * * shall belong to the state of Minnesota until actually paid to the teacher or his [or her] beneficiary pursuant to the provisions of this chapter." *Swanson*, 873 F.2d at 1122–23 (Citing Minn.Stat. § 354.10 (1982)).

The *Swanson* court found that in spite of the substantial restrictions placed on the power of a teacher to transfer or assign his or her interests in the plan, the plan "would not be a valid spendthrift trust under Minnesota law." *Swanson*, 873 F.2d at 1124. The *Swanson* court reached this conclusion on two separate grounds. First, the court found that because a teacher, who was also the beneficiary of the plan, made contributions to the plan, the plan was self-settled. The court found that this arrangement violated Minnesota's common law rule which holds that where the settlor of a trust and beneficiary of a trust are the same person (i.e. the trust is self-settled), the trust is not a spendthrift trust. *Swan-*

3. Section 541(a)(1) states:
(a) The commencement of a case section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1).

*son,* 873 F.2d at 1124. The *Swanson* court noted that the rule against self-settled trusts being enforced as spendthrift trusts is the rule in "most jurisdictions." *Swanson,* 873 F.2d at 1123. Second, the *Swanson* court relied on the plan's provisions which allowed a teacher who terminated his or her employment to obtain a refund of his or her contributions to the plan. The *Swanson* court held that "[w]hile this is a very limited right of control over the Funds, the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying the spendthrift trust." *Swanson,* 873 F.2d at 1124.

The *Swanson* court noted that "Section 541(c)(2) was intended to exclude a debtor's beneficial interest in a 'traditional' spendthrift trust, not a statutory retirement fund." *Swanson,* 873 F.2d at 1123 (Relying on *In re Graham,* 726 F.2d 1268, 1271 (8th Cir.1984)). The *Swanson* court backed away, however, from making a blanket rule regarding statutory retirement funds. The court stated: "[n]evertheless, we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under § 541(c)(2)." *Swanson,* 873 F.2d at 1124 (Apparently distinguishing *Graham,* 726 F.2d 1268 (8th Cir.1984)).

■ The Debtor in this case seems to suggest that "applicable nonbankruptcy law" is Iowa state law. *See* Debtor's Brief in Support of Property Claimed Exempt, p. 2, ¶ 6, February 3, 1989 ("spendthrift trusts are valid in Iowa"). The Trustee did not address this issue, but appears to also assume that Iowa law governs this case. The Court notes, however, that the TIAA/CREF documents themselves state that they are to be governed by the laws of the State of New York.[4] A finding that New York law governs the effect and validity of the TIAA/CREF annuities is in ac-

cord with other courts who have also considered that issue. *See e.g., Connick v. Teachers Ins. & Annuity Ass'n.,* 784 F.2d 1018, 1020 n. 1 (9th Cir.1986) ("TIAA/CREF annuities require application of New York Law"); *In re Braden,* 69 B.R. 93 (Bankr.E.D.Mich.1987) (Finding that the "applicable nonbankruptcy" law to be interpreted in a case involving TIAA/CREF was the law of the State of New York). Accordingly, if the Debtor's interest in the annuity plan qualifies as a valid spendthrift trust under New York law, then the plan is excluded from the inclusive powers of § 541(a)(1). If the annuity plan is not found to be a valid spendthrift trust under New York law, then it is considered to be property of the estate under § 541(a).

■ The Court is persuaded by the *Braden* court's analysis of the spendthrift trust quality of the TIAA/CREF annuities. The *Braden* court noted that § 541(c)(2) raises three issues. First, whether the Debtor's interest in the trust is a beneficial interest; second, whether the transferability of that beneficial interest is restricted; and third, whether that restriction is enforceable under state law. *Braden,* 69 B.R. at 94.

There is no dispute that the Debtor's interest in the trust is a beneficial interest. The TIAA/CREF annuity plan specifically provides that the beneficial interest is the right to receive the future annuity payments upon the occurrence of certain events, such as death or retirement. *Braden,* 69 B.R. at 94.

The annuity plans make no provision for a cash surrender value or loans, and are not subject to the claims of the Debtor's creditors. The annuity plans specifically provide for a complete restriction on the transferability of the Debtor's interest,[5]

---

4. The annuity plan provisions that provide for the application of the State of New York law states in part:

    This contract is made and delivered in and is to be performed in the State of New York. The validity and effect of the contract are governed by the laws there in force. (TIAA) Exhibit 1 § 18.

This certificate is made and delivered in and is to be performed in the State of New York. The validity and effect of the certificate are governed by the laws there in force. (CREF) Exhibit 2 § 18.

5. The restriction on the transferability of the Debtor's interest in the plan is as follows:

and also contain anti-alienation provisions which prohibits the beneficiary from assigning his interest.[6] The Debtor's interest in the annuity plan is simply a beneficial interest, and he has no right to make any kind of transfer or assignment of his future interest in the annuity plan.

The final issue is whether the restrictions as stated in the annuity plan are enforceable under New York state law. The law of the State of New York fully supports the contention that the annuity plan is a spendthrift trust under "applicable non-bankruptcy law." *Alexandre v. Chase Manhattan Bank, N.A.*, 61 A.D.2d 537, 403 N.Y.S.2d 21 (1978); *see also In re Braden*, 69 B.R. 93, 94 (Bankr.E.D.Mich.1987) (Citing *Alexandre* for the proposition that under New York law, TIAA/CREF plans are spendthrift trusts.)

The Debtor cannot alienate his interest in the trust and he does not possess exclusive and effective control over the distribution or termination of the trust. The Debtor's annuity plan meets the requirements of New York state law in that the anti-alienation, assignment, and garnishment provisions of the TIAA contract and CREF certificate are enforceable under New York law. *Alexandre, supra.* First, the annuity plan contains a restriction stating that the funds shall not be subject to the claims of Debtor's creditors. *See supra* note 5. Second, the annuity plan also contains a provision, which is identical in both the TIAA contract and the CREF certificate,

forbidding any type of assignment. *See supra* note 6. Third, the Debtor's annuity plan, as of the date of filing for bankruptcy, is not subject to revocation for any reason.

Last, the University of Iowa sits as an additional barrier between the Debtor and the funds in the annuities. The Debtor has been employed by the University of Iowa for approximately twelve years. As noted earlier,[7] the University required the debtor to participate in a retirement program. Although the University allows its employees to select which retirement program it will participate in, the employee has no bargaining power with the University beyond that. The University has created a number of conditions that "apply to any request for a refund of contributions." Exhibit 6, PART II, B. University Funded Retirement Plans. Those conditions include the following: First, the employee's employment with the University must be terminated. Second, the University will approve only one request for a refund of contributions. Third, a refund will only be approved if the annuity contract has been in effect for less than five years. Fourth, a refund will only be approved if the employee has been employed by the University for less than five years. Last, the annuity company will grant a refund only on the University's approval. Therefore, compliance with the above noted conditions are conditions precedent to receiving a refund of contributions. Exhibit 6, PART II, B. University Funded Retirement Plans.

---

*Protection Against Claims of Creditors.* The benefits, options, rights, and privileges accruing to any Beneficiary will not be transferable or subject to surrender, commutation, or anticipation, except as may be otherwise endorsed on this contract. To the extent permitted by law, annuity and other benefit payments will not be subject to the claims of any creditor of any Beneficiary or to execution or to legal process. (TIAA)
Exhibit 1 § 15.

*Protection Against Claims of Creditors.* Benefits under this certificate are protected by the following clause ...: "No money or other benefit provided or rendered by the corporation hereby formed, nor any rights or interests of any participating person in any benefit provided by said corporation, or of any beneficiary of any such person, or of any others who may have a right derived from any such

person or beneficiary, shall be subject to assignment or pledge, or be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of any such person, or of any beneficiary of any such person, or of any others who may have a right under any such person or beneficiary." (CREF)
Exhibit 2 § 15.

**6.** The provision forbidding any type of assignment of the plan states:

*No Assignment.* Any assignment or pledge of this contract or of any benefit hereunder will be void and of no effect.
Exhibit 1 § 14; Exhibit 2 § 14.

**7.** *See supra* note 2 and accompanying text.

The University imposes the condition that a refund will be allowed only if the employee has been employed by the University for less than five years. There is no dispute that the Debtor has been employed by the University for 12 years as of the date of filing bankruptcy. Therefore, according to the University's Retirement Program and Refund Policy, even if the Debtor were to terminate his employment, the Debtor would not be eligible to receive a refund of his contributions into the annuities. Thus, one of the two major grounds relied upon by the *Swanson* court is not present in this case. *See Swanson*, 873 F.2d at 1124 (Right to withdraw contributions upon termination of employment held to give debtor control over the trust assets in a way "inimical to the policies underlying the spendthrift trust.").

The case of *Alexandre v. Chase Manhattan Bank, N.A.*, 61 A.D.2d 537, 403 N.Y. S.2d 21 (1978), is the leading New York case regarding the spendthrift trust quality of TIAA/CREF annuities. In *Alexandre*, the creditor was the debtor's ex-wife, seeking to enforce a judgment against the debtor for arrearages in alimony and child support payments. The judgment creditor alternatively sought recovery of the accumulated premiums paid, appointment of a receiver and payment of the annuities over to the receiver or a court ordered acceleration of the starting date of annuity payments to the debtor and sequestration of those payments in favor of the judgment creditor. The *Alexandre* court denied each of those requests. The court denied the first two requests because the court found that there was no debt owed to the debtor, nor did TIAA possess any property in which the debtor had a property interest. The court found that the only interest the debtor had was a contingent interest which would pay him a monthly amount if he was alive on the starting date. The *Alexandre* court further noted that New York had enacted a specific law upon which CREF was based upon which prohibited creditors from reaching an annuitant's interest in a

CREF program. The *Alexandre* court did not find the judgment creditor's claims of child support and alimony to be strong enough override the parties' intent and the legislative statement protecting the annuities.

A subsequent New York case, *Matter of Aurora G. v. Harold Aaron G.*, 98 Misc.2d 695, 414 N.Y.S.2d 632 (1979), found that the *Alexandre* case controlled on issues of a creditor's ability to reach TIAA/CREF funds. In *Aurora G.*, the debtor was also behind in child support and alimony payments. The debtor was not due to receive CREF payments until 1994. The court refused to order the starting date of the annuity payments to be accelerated. However, the TIAA payments were being made to the debtor at the time of the lawsuit, and the court had no problem in finding that the creditor could reach the payments that were being made to the debtor. The *Aurora G.* court was careful to note that the fact that payments were being made was the distinguishing factor between that case and the *Alexandre* case.

The cases of *Alexandre* and *Aurora G.* establish that under New York law the TIAA/CREF plans are spendthrift trusts.[8] The Court was not able to find any cases discussing a challenge to the TIAA/CREF plans on the theory that the plans were self-settled, and thus, not a spendthrift trust. New York has codified the general rule that "a property owner cannot utilize a spendthrift trust to insulate his assets from the reach of present or future creditors." *Vanderbilt Credit Corp. v. Chase Manhattan Bank, N.A.*, 100 A.D.2d 544, 473 N.Y.S.2d 242 (App.Div.1984) (Citing Est. Powers & Trusts Law § 7–3.1(a)). The Court notes that the following subsection of that statute reads:

> For purposes of paragraph (a) of this section, *a trust,* custodial account, annuity or insurance contract *established as part of either a* Keogh account, *annuity* or insurance *contract established as part of* either a Keogh (HR–10) plan or *a retirement plan established by a corpo-*

8. Those two cases do not appear to actually use the term "spendthrift trust" anywhere in the opinions. The substance of the decisions, however, leads the Court to conclude that the New York courts considered the TIAA/CREF plans to be spendthrift trusts.

*ration,* which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, *shall not be considered a disposition in trust for the use of the creator . . . .*

N.Y. Est. Powers & Trusts Law § 7–3.1(b)(1) (McKinney 1988) (emphasis added).

New York case law indicates that New York courts would not regard an employee's contribution to the TIAA/CREF plans as making the plans self-settled in nature. In *Fordyce v. Fordyce,* 80 Misc.2d 909, 365 N.Y.S.2d 323 (Sup.Ct.1974), the court was faced with a judgment creditor/ex-wife's claim that her debtor/ex-husband's retirement plans were subject to attachment. In one of the retirement plans in question, both the employer and the employee contributed to the plan as required by a labor contract. The judgment creditor claimed that the debtor's contributions to the pension plans were voluntarily made by him to a trust of which he was the beneficiary, and thus the pension plan was self-settled. The court found that the pension plans in question were "in no event self-settled trusts." The court noted that the contributions were voluntary only in the sense that continued employment by the debtor was voluntary. The court did not find this voluntary act of continued employment to be sufficient to make the pension plan a self-settled trust. The *Fordyce* court also noted that "[e]ven in the case of a self-settled trust, creditors can only reach the interest the settler retained for himself." In this case, the only interest the Debtor has retained is a contingent right to receive future payments.

The Court is convinced that under New York law, unlike the Eighth Circuit's interpretation of Minnesota law, the mere fact that an employee is required as a condition of employment to make contributions to a pension plan, does not therefore make the pension plan self-settled. As a result, the second of the two grounds relied upon by the *Swanson* court would not defeat the spendthrift trust nature of the TIAA/CREF plans. *See Swanson,* 873 F.2d at 1123–24.

**9.** *See Braden,* 69 B.R. 93.

Therefore, the Court finds that the restrictions stated in the annuity plan are enforceable under New York state law. Because of this finding, the annuity plans are found to be spendthrift trusts and excludable from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). The Court is careful to note that this decision rests entirely upon the initial determination that New York law applies. Were the annuity plans governed by, for example, Iowa law, a different conclusion might result. Additionally, the fact that other courts faced with a § 541(c)(2) issue regarding TIAA/CREF have found the annuity plans to be a spendthrift trust under New York law [9] also lends great support to today's decision.

## CONCLUSION

Generally, with only one exception, ERISA-type plans are per se considered property of the bankruptcy estate. *See In re Graham,* 726 F.2d 1268 (8th Cir.1984). The only exception to this rule is if the plan is found to be a valid spendthrift trust under applicable nonbankruptcy law. The Debtor in this case has no present right to reach the funds in question; he is unable to transfer, assign or revoke the annuity plan, and the annuity plan may not be considered self-settled because of the mandatory condition of contributions to the fund upon employment. The Court concludes that the Debtor's annuity plan is considered a spendthrift trust under applicable New York law and therefore excluded from the estate on the basis of § 541(c)(2). Having determined that the annuity plan is not property of the estate, the Court need not reach the exemption question presented by Iowa Code § 627.6(8)(e).

## ORDER

IT IS HEREWITH ORDERED that the Trustee's Objection to Property Claimed Exempt is overruled.