█  In the Matter of the Estate of CHARLES S. FOLSOM, Deceased. T. FRANCIS REIDY et al., Appellants-Respondents; SARAH S. DAY et al., Respondents-Appellants; ATTORNEY-GENERAL OF THE STATE OF NEW YORK et al., Respondents.— Appeal from so much of a decree of the Surrogate's Court, Westchester County, as, *inter alia,* (1) construes the directions to every person benefiting under the testator's will to attend memorial services on July 20th of each year at the grave of the wife of the testator, contained in article " Fifth " of the will, and the conditions with reference thereto, to be valid and

binding and enforcible with respect to the beneficiaries of the "Foundation", established by said will, but to have no effect with respect to the life beneficiaries of the express trusts, also established by said will, and (2) directs that partially limited letters of trusteeship of the trusts under article "Third" of the will shall issue to appellants-respondents, upon qualifying. Decree insofar as appealed from affirmed, with costs to all parties filing separate briefs, payable out of the estate. No opinion. Nolan, P. J., Beldock, Ughetta and Kleinfeld, JJ., concur; Wenzel, J., concurs in the affirmance, except as to the affirmance of the provision of the decree which construes article "Fifth", and the conditions with reference thereto, to have no effect with respect to the life beneficiaries of the express trusts, and dissents therefrom and votes to modify the decree by striking from the third decretal paragraph thereof the words "but have no effect" and by substituting therefor the word "and", with the following memorandum: The will bequeathed the bulk of the testator's assets to named trustees for the establishment of separate trusts, each for the benefit of a respective beneficiary for his life. As to the remainder of each trust, the will directs that the property shall be devoted perpetually to finance the education of persons to be selected by the trustees, for which purpose an "Educational Fund" is to be established, bequeaths all the remainders to the trustees for the purposes of the said fund "upon the termination of each of the" said life trusts, authorizes the trustees to create a charitable membership corporation, to be known as the "Maud Glover Folsom Foundation", as an entity to carry out these purposes and provides that the trustees shall be the directors or trustees of the corporation. The creation of this educational trust had been conceived by the testator in collaboration with his predeceased wife, Maud Glover Folsom. The testator was devoted to her memory, and a further provision in the will requires all the beneficiaries of the life trusts and the educational trust to attend a certain annual memorial service for her at her grave, except that, as to any such service they are unable to attend for certain reasons, they may instead visit her grave at another time during the calendar year of that service, and states that payment of benefits under the will to any beneficiary shall cease if that beneficiary shall fail to give evidence of his presence at the grave at least once annually, unless excused for the same certain reasons. Upon cessation of payments of benefits to any of the life beneficiaries of the trusts, under this provision, that beneficiary's life trust would of course terminate. The specific verbiage in the will as to the payment over of the remainders of the life trusts is to be found in paragraphs "A" and "D" of article "Third", which article establishes the life trusts, and in the first paragraph of article "Fourth". In the said paragraphs "A" and "D" it is provided that the payment over is to be to the Foundation and is to take place "upon the death" of each respective life beneficiary. However, article "Fourth" states that the bequest of the remainder is to the trustees named in the will and is to take place "upon the termination of each of the trusts", and said paragraph "D" also refers to the deaths of the beneficiaries as marking the termination of their said trusts. The condition requiring attendance at Mrs. Folsom's grave has been held to be invalid as to the life beneficiaries on the ground that the will fails to provide for a gift over in the event of a breach of the condition. The general principle relied on is settled law (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 469). Guided by the general principles of construction adverted to below, I am of the opinion that the requirement that there must be a gift over has been satisfied. The prime consideration in the construction of a will is "the intention of the testator as expressed in the will" which "must be gleaned not from a single word or phrase but from a

sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed", and if there is "a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly * * * despite the fact that a literal reading of the portion under construction might yield an inconsistent or contradictory meaning because of the use of awkward language inadvertently or carelessly chosen" (*Matter of Fabbri,* 2 N Y 2d 236, 239–240). Contradictory clauses should, if possible, be reconciled (*Matter of Title Guar. & Trust Co.,* 195 N. Y. 339, 344) and the court may reject, supply or transpose words (*Matter of Gallien,* 247 N. Y. 195, 200; *Leggett* v. *Stevens,* 185 N. Y. 70, 77). Conceding that the beneficiaries of the life trusts were major objects of the testator's bounty, but at the same time not forgetting that the establishment of the educational fund and the gifts to the fund were also major considerations of the testator (the educational fund may be said to have been the dream project of the testator and his wife), it seems to me that, in degree of importance to the testator, particular beneficiaries were clearly lesser than his condition that there be compliance with his requirement that respect be paid to the memory of his wife, and I think that his intent to terminate the trusts upon breach of the condition and to have the assets of any trust so terminated paid over immediately to the fund upon such breach was sufficiently expressed or indicated in the will, that is, (1) in article "Fourth", wherein it is stated that payment over is to be made "upon the termination of each of the trusts" — as we have seen, termination would take place upon breach of the condition in question — and (2) in paragraphs "A" and "D", wherein the phrase "upon the death of the beneficiary" should be read to mean "upon the termination of each of the trusts", in view of the use of that phrase in article "Fourth" and the express reference in the very paragraph "D" to the matter of termination of the trusts, indicating that in paragraph "D" the testator actually had "termination of the trusts" in mind and inadvertently used the phrase "upon the death of the beneficiary" as synonymous.