**Raymond Lione MORTER d/b/a Swinengineering, Inc., Plaintiff,**

v.

**FARM CREDIT SERVICES, Defendant.**

**Civ. No. L89–62.**

United States District Court,
N.D. Indiana,
Lafayette Division.

Feb. 6, 1990.

Carolyn S. Holder, Elizabeth Justice, Holder & Davis, Lafayette, Ind., for plaintiff.

Chet Zawalich, Boynton Kamm & Esmont, South Bend, Ind., for Farm Credit Services.

**392**

Leonard Opperman, Bose McKinney & Evans, Indianapolis, Ind., for intervenor Teachers Ins. and Annuity Ass'n of America and College Retirement Equities Fund.

Edward Chosnek, Lafayette, Ind., Trustee.

## MEMORANDUM OPINION AND ORDER

### ALLEN SHARP, Chief Judge.

Raymond Lione Morter is a professor of veterinary science at Purdue University. Morter has served the university as a faculty member for thirty of his 69 years. He faces mandatory retirement when he turns 70 this fall. Though approaching his "golden years" both professionally and chronologically, Morter recently filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Chapter 7 liquidation is a remedy through which the debtor, in effect, surrenders his non-exempt assets pro rata to his creditors and seeks the relief of a discharge.

An educator at the college level for most of his adult life, Morter holds an interest in two retirement annuities identified as the Teacher's Insurance and Annuity Association (TIAA) and the College Retirement Equity Fund (CREF). Purdue University, as Morter's employer, has paid the entire cost of his participation in the TIAA–CREF plans. A plan participant may voluntarily make additional payments to his retirement fund, but Morter has not done so. Upon his retirement, Morter will receive a periodic stream of income until he dies. The annuities do not provide for loans or have cash surrender value, and the right to receive income may not be pledged or assigned.[1] Morter argues the annuities (the combined value of which exceeds $280,000) are exempt property under relevant law and thus not part of the bankruptcy estate reachable by his creditors.

The Bankruptcy Court, applying Indiana law, held the only allowable exemption on the annuity contracts was the $100 intangible personal property right pursuant to I.C. 34-2-28-1(a)(3). Morter appeals that determination and presents two issues for this court's review: 1) whether the TIAA–CREF annuities are excludable from the bankruptcy estate under 11 U.S.C. § 541(c)(2) and 2) whether the retirement plan annuities are exempt from the bankruptcy estate pursuant to Indiana or other applicable state law.

28 U.S.C. § 158(a) confers jurisdiction in the district court to hear this appeal, taken pursuant to Bankruptcy Rule 8001(a), from the Bankruptcy Court's final judgment.

### I. Standard of Review

Rule 8013 of the Federal Rules of Bankruptcy Procedure governs the pertinent standard of review. In an appeal from a bankruptcy court's decision, a district court applies two standards of review: one for findings of fact; the other for conclusions of law. *Matter of Busick*, 65 B.R. 630, 632 (N.D.Ind.1986). When the appellant alleges errors of fact, Rule 8013 dictates that "findings of fact shall not be set aside [by the district court] unless clearly erroneous." *See also In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The relevant standard of review for conclusions of law also is governed by Rule 8013, which provides the district court with the discretion to "affirm, modify, or reverse" the bankruptcy court's legal conclusions. *See also Matter of Evanston Motor*

---

1. Paragraph 16 of the TIAA specimen contract provides: "Any assignment or pledge of this contract or any benefit hereunder will be void and of no effect." Paragraph 17 provides:
 The benefits, options, rights, and privileges accruing to any Beneficiary will not be transferable or subject to surrender, commutation, or anticipation, except as may be otherwise

 endorsed on this contract. To the extent permitted by law, annuity and other benefit payments will not be subject to the claims of any creditor of any Beneficiary or to execution or to legal process.

 The CREF specimen contract contains similar provisions.

*Co.*, 735 F.2d 1029, 1031 (7th Cir.1984). When a bankruptcy judge's conclusions are challenged, the district court must make a de novo review and may overturn the findings if they are contrary to law. *Busick*, 65 B.R. at 632.

Having found the Bankruptcy Court's factual findings not clearly erroneous, this court proceeds to review independently the Bankruptcy Court's conclusions of law.

## II. Legal Conclusions and Discussion

Raymond Morter filed a Chapter 7 bankruptcy petition in June of 1986 and, in so doing, created a bankruptcy estate. Generally, a bankruptcy estate consists of "all legal and equitable interests of the debtor in property as of the commencement date." 11 U.S.C. § 541(a)(1). The only relevant exception for purposes of this review is found at 11 U.S.C. § 541(c)(2). This section provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable under this title." 11 U.S.C. § 541(c)(2). Thus, if state law prevents a creditor from reaching income payable at a future date (as when the debtor is the beneficiary of a spendthrift trust), then the Bankruptcy Code will similarly treat that right to receive future income as outside the bankruptcy estate and likewise unreachable by creditors.

■ The legislative history to § 541(c)(2) unambiguously indicates this provision was designed to preserve the restrictions on spendthrift trusts. H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977) U.S.Code Cong. & Admin.News 1978, p. 6325 ("Paragraph (2) of subsection (c) ... preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law."); S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978) U.S.Code Cong. & Admin.News 1978, p. 5869 ("Paragraph (2) of subsection (c) ... preserves restrictions on a transfer of a spendthrift trust that the restriction is enforceable nonbankruptcy law to the extent of the income reasonably necessary for the support of a debtor and his depend-

ents."). What remains unclear is whether § 541(c)(2) excludes from the bankruptcy estate only traditional spendthrift trusts, or whether Congress also intended to exclude other "arrangements" [2] that exhibit the characteristics of a spendthrift trust.

Other circuits addressing this question have generally taken the conservative view that Congress intended to exclude from the bankruptcy estate only traditional spendthrift trusts as they are defined under applicable nonbankruptcy law. *See, e.g., In re Swanson*, 873 F.2d 1121, 1123 (8th Cir. 1989) (" 'Congress only intended by § 541(c)(2) to preserve the status of traditional spendthrift trusts, as recognized by state law....' ") *quoting In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir. 1985) (" '[A]pplicable nonbankruptcy law' refers only to state spendthrift law. Therefore, ... pension plans ... are excluded pursuant to section 541(c)(2) only if they are enforceable under state law as spendthrift trusts."); *Matter of Goff*, 706 F.2d 574, 580 (5th Cir.1983) ("Congress intended to exclude only trust funds in the nature of 'spendthrift trusts' from the property of the estate."). *But see McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1207 n. 1 (4th Cir.1985) ("Nowhere in the statute [§ 541(c)(2)] is there a requirement that the trust be 'traditional,' nor is there any definition of what might be found to constitute a 'traditional' trust."). While the statutory language of § 541(c)(2) does not expressly limit the exclusion solely to spendthrift trusts, the court finds the legislative history and the cited circuit opinions to be persuasive authority for the narrower construction urged by the trustee and Farm Credit Services. Accordingly, the court holds that, for the TIAA–CREF plans to be excluded from Morter's bankruptcy estate under § 541(c)(2), they must be spendthrift trusts under applicable nonbankruptcy law.

■ Paragraph 20 of the TIAA specimen contract provides in relevant part: "This

**2.** such as ERISA-qualified plans. For a listing of Employee Retirement Income Security Act qualifications, see generally 29 U.S.C. § 1056 and 26 U.S.C. § 401.

contract is made and delivered and is to be performed in the State of New York. It is to be governed as to its validity and effect by the laws there in force, with reference to which it is made." Paragraph 20 of the CREF specimen contract reads almost verbatim in specifying that the laws of the State of New York are to govern the contract's validity and effect. Because Morter and TIAA/CREF expressly have provided that New York law will govern their contracts, the court finds New York's spendthrift trust law to be the "applicable nonbankruptcy law." This holding is consonant with other courts that have addressed the issue. *See, e.g., In re Montgomery*, 104 B.R. 112, 115 (Bankr.N.D.Iowa 1989) ("New York law governs the effect and validity of the TIAA/CREF annuities. . . ."); *In re Braden*, 69 B.R. 93, 94 (Bankr.E.D.Mich.1987) ("[A]pplicable nonbankruptcy law" . . . is the law of the State of New York. . . ."). Accordingly, if the TIAA/CREF plans qualify under New York law as spendthrift trusts, then the plans are excluded from Morter's bankruptcy estate under § 541(c)(2); if the plans are not spendthrift trusts under New York law, then they are considered property of the estate pursuant to § 541(a).

The above-cited bankruptcy cases (*Montgomery* and *Braden*) also grappled with New York's treatment of the TIAA/CREF retirement plans. In each case, the court excluded the plans from the bankruptcy estate after finding them enforceable under applicable state law. But only the *Montgomery* court specifically found the pension plans to constitute a valid spendthrift trust under nonbankruptcy law. *Montgomery*, 104 B.R. at 116 ("The law of the State of New York fully supports the contention that the annuity plan is a spendthrift trust under 'applicable nonbankruptcy law.' "). The *Braden* court seemed to apply the more liberal standard of not requiring the pension plans to constitute a

traditional spendthrift trust under applicable law.[3] Because this court has adopted the conservative construction of § 541(c)(2), *Braden*'s reasoning is inapposite to this appeal. The court proceeds to characterize the TIAA/CREF plans under New York law.

*Montgomery* cited a pair of New York cases (*Matter of Aurora G. v. Harold Aaron G.*, 98 Misc.2d 695, 414 N.Y.S.2d 632 (1979) and *Alexandre v. Chase Manhattan Bank, N.A.*, 61 A.D.2d 537, 403 N.Y.S.2d 21 (1978)) for the proposition that New York law regards the TIAA/CREF plans as spendthrift trusts.[4] In *Alexandre* the court prevented a judgment creditor from reaching her ex-husband's TIAA/CREF pension funds. The debtor's only interest in the funds was a contingent interest that would pay him a monthly amount only if he were alive. Further, the court noted the annuity contract's provisions were consistent with the CREF enabling statute that placed beyond a creditor's reach the annuitant's interest in a CREF program. In *Aurora* the court (citing *Alexandre*) likewise found the debtor's contingent interest in the CREF program to be unreachable. However, the court determined the TIAA proceeds could be sequestered because payments had already begun under the TIAA annuity; thus, the debtor's interest in the TIAA fund was no longer contingent. While *Aurora* and *Alexandre* recognize the spendthrift-like qualities of the TIAA/CREF plans, this court does not view those cases as standing for the broad rule that *Montgomery* announced—that the TIAA/CREF plans are spendthrift trusts under New York law.

■ The New York Legislature has not been silent on the issue of spendthrift trusts. Under New York law all express trusts are presumed to be spendthrift unless the settlor expressly provides other-

---

**3.** *Braden* seemed to require only that the plans be enforceable under New York law, not that they constitute valid spendthrift trusts. *See Braden*, 69 B.R. at 94 ("The Court concludes that these [plan] restrictions would be completely enforceable under applicable non-bankruptcy law.").

**4.** *Montgomery* acknowledged, however, that neither court specifically used the term "spendthrift trust" in its opinion.

wise. N.Y.Est. Powers & Trusts Law § 7–1.5(a)(1) (McKinney 1981–82 Supp.), *cited in Regan v. Ross*, 691 F.2d 81, 86 n. 14 (2d Cir.1982). To constitute an express trust of personal property, there are four essential elements: (1) a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund or other identifiable property; and (4) the actual delivery of the fund or other property to the trustee with the intention of passing legal title thereto to him as trustee. *Matter of Fontanella*, 33 A.D.2d 29, 304 N.Y.S.2d 829 (1969). In addition, while "no particular formula of words is required to accomplish [a trust] ..., the words and acts relied upon must be unequivocal in nature and admit of no other interpretation than that the property is held in trust" (citations omitted). *Id.*

 In this court's view, while both the TIAA and CREF annuity contracts satisfy the four essential elements of an express trust, only the CREF contract is so "unequivocal in nature" as to lead this court inexorably to the conclusion that the formation of a trust was the object of the parties' agreement. New York cases have long held that the difference between annuities and trusts for the payment of income to a beneficiary is substantial (citations omitted). *See, e.g., Petition of Tomasetti*, 147 N.Y.S.2d 885, 886 (N.Y.Sur.1955).

> The primary distinction between an annuity and a trust is that an annuity confers upon the beneficiary a right to a fixed and certain sum of money, whereas a trust confers upon a beneficiary an indefinite and uncertain sum of money based upon actual income.... [W]here there is no provision for invasion of principal, the Courts have held that a trust rather than an annuity has been created (citations omitted).

*In re Folsom's Will*, 155 N.Y.S.2d 140, 148 (N.Y.Sur.1956), *aff'd*, 6 A.D.2d 691, 174 N.Y.S.2d 116 (N.Y.A.D.1958), *aff'd sub. nom. In re Folsom's Estate*, 6 N.Y.2d 886, 190 N.Y.S.2d 381, 160 N.E.2d 857 (N.Y.1959).

The CREF contract provides: "The amount of dollars payable will fluctuate in accordance with the current value of an Annuity Unit, which will change primarily with changes in the value of the common stocks and other assets of CREF. *No guarantee of dollar amounts is provided* ..." (emphasis added). A CREF annuitant is not guaranteed a fixed dollar amount but a variable share of the portfolio's return, depending upon the annuitant's actuarial circumstances. Accordingly, the court finds the CREF annuity contract to constitute an express trust under New York law; indeed, pursuant to EPTL § 7–1.5(a)(1), this express trust is a spendthrift trust, the settlor not having provided otherwise.

The TIAA contract is not a trust, however. Annuity benefits under TIAA are determined by an elaborate Rate Schedule, which considers an annuitant's age, gender, and other significant actuarial factors. TIAA reserves the right to update a Rate Schedule as provided in Paragraph 12. Paragraph 12 provides: "TIAA may, at any time and from time to time, substitute a new Rate Schedule applicable to all retirement annuity contracts of this form, in lieu of the Rate Schedule then in effect.... The new Rate Schedule will apply *only to those premiums that fall due on or after the effective date of the new Rate Schedule* ... (emphasis added)." In other words, when an annuitant purchases[5] a fully paid portion of a life annuity, the rates then in effect will forever determine the income payable to the annuitant as to that fully paid portion. The annuitant is guaranteed a fixed, predetermined income from such fully paid portions, irrespective of the portfolio's later returns. Thus, if the fund's earnings in a given year were inadequate to pay all its annuity obligations, the shortfall would have to be paid out of the fund's principal. The above case law dictates this benefit scheme characterizes an annuity, not a trust.

Accordingly, this court having found the CREF component of Morter's retirement plan excluded from the bankruptcy estate

---

**5.** By paying the premium then due.

pursuant to § 541(c)(2), the judgment of the Bankruptcy Court is hereby VACATED in part and AFFIRMED in part. The case is REMANDED for a determination of the value of the TIAA plan. In addition, Morter asks this court to find the TIAA plan exempt from the bankruptcy estate pursuant to Indiana or other applicable state law. On this issue, the Bankruptcy Court correctly applied Indiana law and properly determined the only allowable exemption on the annuity contract is the $100 intangible personal property exemption pursuant to I.C. 34–2–28–1(a)(3). IT IS SO ORDERED.