**In the Matter of Darol Blaine VANMETER, Debtor.**

**Bankruptcy No. 90–12047.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Feb. 25, 1992.

Steven J. Ouellette, Fort Wayne, Ind., for debtor.

Frank O. McLane, Marion, Ind., trustee.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Debtor, Darol Blaine VanMeter, sought relief under Chapter 7 of the United States Bankruptcy Code on November 30, 1990. On the date of the petition, he was employed by K & K Insurance Company, Inc. and participated in the company's 401(k) profit sharing trust plan. The plan is qual-

ified under the Employee Retirement Income Security Act of 1974 (ERISA). Debtor's interest in the plan was valued at $10,328.64 [1] as of June 30, 1990. Debtor claimed his interest in the plan as exempt.

Pursuant to the plan, the debtor has the ability to access his account in certain circumstances. The plan provides that the debtor can withdraw up to 100% of his pre-tax contributions in the event of financial hardship, retirement, termination of employment, or total and permanent disablement. The plan further provides that, because of the debtor's total vested value, he is eligible for up to a $10,000.00 loan. Upon termination of employment, the plan provides that because the debtor is 100% vested in the employer and employee accounts he may receive *all* benefits immediately if the plan administrator determines such according to a uniform and nondiscriminatory policy. If the plan administrator determines otherwise, benefits are deferred until debtor's early or normal retirement date, death, or disability.

This matter is before the court on the trustee's objection to debtor's claimed exemption. The exemption is based upon I.C. 34–2–28–1(a)(6). This relatively recent addition to Indiana's exemption laws authorizes this state's domiciliaries to exempt

(6) An interest the judgment debtor has in a pension fund, a retirement fund, an annuity plan, an individual retirement account, or a similar fund, either private or public. I.C. 34–2–28–1(a).

The trustee does not contend that the debtor's interest in the plan does not qualify for the exemption under the terms of the statute. Instead, the trustee challenges the validity of the statute upon which the exemption is based. The trustee argues that this portion of Indiana law is pre-empted by § 514(a) of ERISA (29 U.S.C. § 1144(a)). Although the debtor opposes this contention, he alternatively argues that even if I.C. 34–2–28–1(a) is pre-empted by ERISA, the trustee cannot reach debtor's interest in the plan because it is not property of the estate pursuant to 11 U.S.C. § 541(c)(2).

---

**1.** This amount is the sum of debtor's balance in both the employer contributed account and the employee contributed account. Both accounts are 100% vested.

Because a debtor has no need to exempt property which is not part of the estate, *see Owen v. Owen,* —— U.S. ——, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991), we must first address debtor's alternative argument—whether debtor's interest in the plan is excluded from becoming property of the estate pursuant to § 541(c)(2). If not, we must then consider the trustee's objection to the claimed exemption.

## I. *Property of the Estate*

The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). An exception to the broad scope of § 541(a) is found at § 541(c)(2). This section provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title. 11 U.S.C. § 541(c)(2).

The interpretation of the words "applicable nonbankruptcy law" has contributed to volumes of case law on the subject. Based upon decisions issued by the District Court for the Northern District of Indiana, *see Matter of Cook,* 43 B.R. 996 (D.N.D.Ind. 1984); *Matter of Jones,* 43 B.R. 1002 (D.N.D.Ind.1984), this court, in *Matter of Gifford,* 93 B.R. 636 (Bankr.N.D.Ind.1988), recognized that § 541(c)(2) "applies only to traditional spendthrift trusts as defined by state law." *Id.* at 638 (footnote omitted). This conclusion has been the overwhelming position of the courts in this circuit. *Employee Benefits Committee v. Tabor,* 127 B.R. 194, 199 (D.S.D.Ind.1991), aff'g *Matter of Cress,* 121 B.R. 1006 (Bankr.S.D.Ind. 1990) (citing *Morter v. Farm Credit Services,* 110 B.R. 390 (D.N.D.Ind.1990); *In re Pulley,* 111 B.R. 715 (Bankr.N.D.Ind.1989); ... *In re McVade,* 72 B.R. 560 (Bankr. N.D.Ind.1987); *Matter of Berndt,* 34 B.R. 515 (Bankr.N.D.Ind.1983); *In re Di Piazza,* 29 B.R. 916 (Bankr.N.D.Ill.1983); *In re Goldberg,* 98 B.R. 353 (Bankr.N.D.Ill.1989); *In re Silldorff,* 96 B.R. 859, 862–63 (D.C.D.Ill.1989); *In re Hohl,* 81 B.R. 450 (Bankr.N.D.Ill.1987); *In re Dagnall,* 78 B.R. 531 (Bankr.C.D.Ill.1987); *In re Sundeen,* 62 B.R. 619 (Bankr.C.D.Ill.1986)).

On July 16, 1991, the Seventh Circuit, in *Morter v. Farm Credit Services,* 937 F.2d 354 (7th Cir.1991), *rev'g in part,* 110 B.R. 390 (N.D.Ind.1990), modified this position. The court held that the proper inquiry under § 541(c)(2) is one of access rather than whether a particular plan qualifies as a traditional spendthrift trust in accordance with state law. While the court recognized that "[s]tate law determines whether access to a fund is sufficiently restricted to qualify for exclusion from the bankruptcy estate", *Morter,* 937 F.2d at 356, the court went on to apply a sort of federal access test to the retirement plan at issue.[2] The court concluded:

> *The proper inquiry under section 541(c)(2), then, is* not whether the accumulated funds are in a "traditional" spendthrift trust, but *whether the retirement plan bars the beneficiary and his creditors from reaching the funds.* If it does, the plan is tantamount to a spendthrift trust under state law. *Morter,* 937 F.2d at 358 (emphasis added).

In doing so it reasoned,

> the plain language of section 541(c)(2) does not require that a retirement plan be a "traditional" spendthrift trust.... "The language of § 541(c)(2) does not suggest such a limitation, and the legislative history reveals only that the provision has the unambiguous purpose of preserving enforceable transfer restrictions in spendthrift trusts...." *Id.* at 357, (quoting *McLean v. Central States,* 762 F.2d 1204, 1207 n. 1 (4th Cir.1985)).

Thus, rather than look to the technical requirements of a traditional spendthrift trust, the court held the most important factor in determining if the § 541(c)(2) exclusion applies to be "the extent of access to the plan and who has that access." *Morter,* 937 F.2d at 358. Therefore, unless *both* the debtor/beneficiary and its creditors are barred from reaching the funds

---

**2.** The application of a federal access standard seems particularly appropriate where ERISA qualified plans are concerned, since they are created under and governed by federal law. *See Gifford,* 93 B.R. at 639 n. 3.

the assets will not be excluded from the estate pursuant to § 541(c)(2).

After finding that the particular retirement plan before it had sufficient access restrictions to qualify for the § 541(c)(2) exclusion, the court in *Morter* went on to alternatively find that the retirement plan also qualified under appropriate state spendthrift trust law. Nonetheless, *Morter* is clear that § 541(c)(2) demands an access test, using either a federal standard or a state spendthrift analysis, without requiring rigid adherence to the technical requirements of state spendthrift trust law.

■ Prior decisions from the district court in this district leave no doubt that ERISA qualification alone will not exempt the plan from the trustee's administration, pursuant to § 541(c)(2). *See Cook*, 43 B.R. 996; *Jones*, 43 B.R. 1002. The § 541(c)(2) exclusion mandates that the debtor's interest in the plan must also pass an access test. *Morter*, 937 F.2d at 358. *See also Cook*, 43 B.R. at 1001; *Jones*, 43 B.R. at 1007; and *Gifford*, 93 B.R. at 639. As clarified by the Seventh Circuit, it is not necessary to find a technical spendthrift trust as defined by state law; the primary inquiry must focus on the accessibility of the funds in question in determining if the exclusion of § 541(c)(2) applies. This standard is entirely consistent with the prior decisions of this court and the District Court for the Northern District of Indiana.

> [T]he prime requirement a plan must possess to fit within the § 541(c)(2) exception ... is that the participant/beneficiary cannot possess any means ... by which the participant could gain access to the funds. *Cook*, 43 B.R. at 1001–02. *See also Gifford*, 93 B.R. at 639–40.

■ "Access" requires the court to look at the debtor's ability to acquire the trust funds, rather than the likelihood of actually doing so. Consequently, a lump sum distribution upon voluntary termination of employment has been considered by some courts to be sufficient access to disqualify the plan from the § 541(c)(2) exception.

> Although the ramifications of quitting one's job simply to gain access to interests in the Plan may be sufficiently severe to prevent the abuse of this practice, the power of a beneficiary to compel total distribution of the corpus is antithetical to the nature of a spendthrift trust. Whether or not it is likely that a participant would take such extreme measures, in a true spendthrift trust there is no possible voluntary action a beneficiary can take which would initiate an early termination of the trust or invasion of the corpus. *Silldorff*, 96 B.R. at 864. *Contra Jones*, 43 B.R. at 1007.

Nonetheless, the court's conclusion should not be based upon one single factor alone. Instead, it is the cumulative effect of the debtor's ability to access the funds through different means and under different guises that determines whether or not the interest in the plan is property of the bankruptcy estate. *Gifford*, 93 B.R. at 640.

The Bankruptcy Court in *Cress* found that the combination of the debtor's ability to receive distribution of the proceeds upon termination of employment and the opportunity for a hardship withdrawal to be more access than permitted under Indiana spendthrift trust law.

> It would be inequitable and unfair to creditors to allow the exclusion of the Debtor's interest from the estate as a spendthrift trust and then the day after she receives her discharge enable her to terminate her employment and receive the whole amount or decide to go to school and receive it under the hardship withdrawal provisions. *Cress*, 121 B.R. at 1012.

The District Court for the Southern District of Indiana agreed with this conclusion and affirmed. *Employee Benefits Committee*, 127 B.R. 194.

Similarly, in this district, Judge Lee has determined that although the ability to receive a lump sum distribution upon termination of employment is not, by itself, sufficient to bring the debtor's interest in the plan into the bankruptcy estate, *Jones*, 43 B.R. at 1007, the *combination* of this ability and the opportunity for a hardship withdrawal was more access than § 541(c)(2) permitted and required turnover of the

funds to the bankruptcy trustee. *Cook*, 43 B.R. at 999 & 1001. Such a plan, he concluded, "functions more like a savings program than a spendthrift trust." *Cook*, 43 B.R. at 1001.

■ The plan presently before the court provides for even more access than the plan considered by the District Court in *Cook*. It not only provides the opportunity for a lump sum distribution upon termination of employment and the ability to access the fund for hardship withdrawal but also permits the debtor to borrow against his vested account balances as well. As with the plan in *Cook*, this plan "functions more like a savings program than a spendthrift trust." *Id.* at 1001. The court finds that the cumulative effect of these access provisions is at odds with both a federal access standard and the "no present dominion or control," *Gifford*, 93 B.R. at 638, requirement of Indiana spendthrift trust law.

■ The debtor next argues that because the plan is qualified under The Internal Revenue Code and complies with the anti-alienation provisions of ERISA, 29 U.S.C. § 1056(d), I.C. 30–4–3–2(c) automatically classifies the plan as a spendthrift trust under Indiana law, regardless of the amount of access available. I.C. 30–4–3–2 reads:

(a) The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

*    *    *    *    *    *

(c) Subsection (a) applies to a trust that meets both of the following requirements, regardless of whether or not the settlor is also a beneficiary of the trust:

(1) The trust is a qualified trust under 26 U.S.C. 104(a).

(2) The limitations on each beneficiary's control over the beneficiary's interest in the trust complies with 29 U.S.C. 1056(d). I.C. 30–4–3–2.

This court previously determined that: Indiana did not and could not have intended to validate all qualified, beneficiary created plans by the amendment, regardless of their terms. Instead, a proper reading of the amendment shows that the state legislature intended to alter only the first requirement of a valid spendthrift trust.[3] The second and particularly the third requirements have been left intact. This court holds, therefore, that "[i]n order for an ERISA-qualified plan to meet the § 541(c)(2) exception, the debtor-beneficiary cannot possess any present access to his interest in the plan at the time the bankruptcy is filed.... [T]he prime requirement a plan must possess to fit within the § 541(c)(2) exception ... is that the participant/beneficiary cannot possess *any means* ... by which the participant could gain access to the funds." *Gifford*, 93 B.R. at 639–640 (footnote added) (quoting *Cook*, 43 B.R. at 1001–1002 (emphasis added)). *See also Employee Benefits*, 127 B.R. at 201.

Even if the Indiana legislature intended to exclude certain pension plans from the bankruptcy estate without regard to the access permitted under otherwise enforceable spendthrift trust law, we cannot allow these types of plans to be excluded from the bankruptcy estate pursuant to § 541(c)(2). "Simply stated, [a state] cannot define a spendthrift trust any way it pleases." *In re Wimmer*, 129 B.R. 563, 567 (D.C.D.Ill.1991). Regardless of the label placed upon it by state law, the plan must *function* like a spendthrift trust. As a result, debtor's argument based upon I.C. 30–4–3–2(c) must fail.

This court therefore holds that the vested funds held in the debtor's employer and

---

3. Indiana law requires three findings for an enforceable spendthrift trust.
1. The settlor may not be a beneficiary of the trust;
2. The terms of the trust must prohibit the transfer of the beneficiary's interest; and

3. The debtor-beneficiary can have no present dominion or control over the trust assets. *Gifford*, 93 B.R. at 638.

employee accounts as of the date of the petition, $10,328.64, together with any interest or earnings thereon, constitute property of the bankruptcy estate.

## II. *Pre-emption*

### A. 29 U.S.C. § 1144(a)

ERISA specifically pre-empts all state laws concerning employee benefit plans. By doing so, it ensures that plan administrators will be subject only to a single set of regulations and will not be burdened with a patchwork scheme of potentially conflicting state laws. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). The pre-emption clause reads:

> the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title.... 29 U.S.C. § 1144(a) (emphasis added).

Congress intended that the words "relate to" would be interpreted in their broad sense. *FMC Corp. v. Holliday*, — U.S. —, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). Consequently, "the pre-emptive force of [ERISA] is not limited to [those] state laws" that "single out or specially mention ERISA plans." *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 2186, 100 L.Ed.2d 836 (1988). Instead, the Supreme Court has determined that a state "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with* or *reference to* [an ERISA] plan." *Shaw*, 103 S.Ct. at 2900 (emphasis added). An either/or test has, thus, been established by which a state law will fall if one of two conditions is met.

Determining whether a state law "has a reference to" ERISA is the most easily applied part of the pre-emption analysis. A state law makes reference to ERISA if it singles out or specifically mentions ERISA plans. *See Mackey*, 108 S.Ct. at 2186. Whether or not a state law "has a connection with" ERISA, however, is somewhat more problematic. Nonetheless, because of the breadth with which Congress intended the ERISA pre-emption clause to be interpreted, *FMC Corp.*, 111 S.Ct. at 408; *Shaw*, 103 S.Ct. at 2900, the Court has determined that a state law has a "connection with" and hence "relates to" an ERISA plan if the law is specifically designed to *affect* qualified employee benefit plans or *falls within ERISA's sphere. See Mackey*, 108 S.Ct. at 2185.

Through pre-emption, Congress has reserved

> 'to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, [Congress] round[s] out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.' *Shaw*, 103 S.Ct. at 2901 (quoting 129 Cong.Rec. 29197 (1974)).

The broad scope of "[p]reemption removes *any possible* conflict because federal law has stepped into the field and ousted the state law that relates to ERISA." *In re Martin*, 115 B.R. 311, 320 (Bankr.D.Utah 1990) (emphasis added), aff'd *In re Fullmer*, 127 B.R. 55 (D.D.Utah 1991). As a result, even a law that is "consistent with ERISA's substantive requirements", *Mackey*, 108 S.Ct. at 2185, or which indirectly encroaches upon the area governed by ERISA, will not be saved.

Despite the breadth of ERISA pre-emption, the Supreme Court has "recognized ... that there are necessary limits to the reach of the phrase 'relates to.'" *Savings & Profit Sharing Fund of Sears Emp. v. Gago*, 717 F.2d 1038, 1040 (7th Cir.1983).

> Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan. *Shaw*, 103 S.Ct. at 2901 n. 21.

Such a law will be saved from pre-emption if it is a law of general application *and* does not affect the relationships between the principal ERISA entities. *Sommers Drug Stores Co. v. Corrigan Enterprises,*

*Inc.,* 793 F.2d 1456, 1468 (5th Cir.1986).[4]

ERISA pre-emption as applied to state exemption statutes has been one of the more troubling issues confronting today's bankruptcy courts.[5] Many bankruptcy courts considering the issue have not needed to go beyond the broad scope of ERISA's pre-emptive reach. These courts found that their particular state exemption statute either "referenced" ERISA indirectly or was "connected with" an ERISA plan because the statute specifically premised the exemption on the plan qualifying under the appropriate provisions of The Internal Revenue Code. *See Pitrat v. Garlikov,* 947 F.2d 419 (9th Cir.1991); *In re Fritsvold,* 115 B.R. 192 (Bankr.D.Minn. 1990); *In re Wimmer,* 129 B.R. 563 (D.C.D.Ill.1991); *In re Komet,* 104 B.R. 799 (Bankr.W.D.Tex.1989); *In re Dyke,* 99 B.R. 343 (Bankr.S.D.Tex.1989), rev'd 119 B.R. 536 (D.S.D.Tex.1990), aff'd 943 F.2d 1435 (5th Cir.1991). They determined that "by naming those sections of the I.R.C. which designate ERISA-qualified plans, [the exemption statute] clearly makes reference to ERISA plans." *Pitrat,* 947 F.2d at 427. Because the exemptions applied only to qualified plans, these courts concluded that ERISA plans were singled out for different treatment and thus the laws "related to" ERISA qualified plans. *See Mackey,* 108 S.Ct. at 2185.

Other bankruptcy courts have held that the pre-emption provision of ERISA did not apply to their particular state statute because the statute was consistent with ERISA's substantive provisions. *See In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo.

1990), aff'd 126 B.R. 348 (D.W.D.Mo.1990), aff'd 954 F.2d 1426 (8th Cir.1992); *In re Hentzen,* 126 B.R. 600 (Bankr.D.Kan.1991); *In re James,* 126 B.R. 360 (Bankr.D.Kan. 1991); *In re Suarez,* 127 B.R. 73 (Bankr. S.D.Fla.1991); *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989). This argument proceeds from the proposition that an exemption is a law "enacted by individual states describing the property of the debtor that cannot be attached by a judgment creditor or trustee in bankruptcy to satisfy a debt" *see Black's Law Dictionary,* (West 6th Ed.1990), and, thus, an exemption merely reinforces ERISA's requirements that benefits cannot be "assigned or alienated." 29 U.S.C. § 1056(d).

Reliance on consistency between exemption statutes and ERISA is a fatal flaw in this type of analysis of the issue and directly conflicts with the Supreme Court's decision in *Mackey.*

> The possibility that [the exemption] was enacted ... to help effectuate ERISA's underlying purposes ... is not enough to save the state law from pre-emption. 'The pre-emption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, even *including state laws that are consistent with ERISA's substantive requirements.'* *Mackey,* 108 S.Ct. at 2185 (emphasis added), (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389 [85 L.Ed.2d 728] (1985)).

Exemption laws may or may not be inherently consistent with ERISA's antialienation provisions.[6] Nonetheless, their poten-

---

**4.** The *Sommers* Court recognized, although rejected, an additional consideration utilized by other courts in applying this exception. This factor considers if the law is a traditional exercise of state authority. *Sommers,* 793 F.2d at 1467 (citing *Authier v. Ginsberg,* 757 F.2d 796, 800 n. 6 (6th Cir.1985)); *Rebaldo v. Cuomo,* 749 F.2d 133, 138 (2nd Cir.1984)).

**5.** Congress considered and rejected a much narrower pre-emption provision due to the fear that a narrow

> formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily contrived to

deal with some particular aspect of private welfare or pension benefit plans and clearly connected to the Federal regulatory scheme. *Shaw,* 103 S.Ct. at 2901 n. 20 (quoting 120 Cong.Rec. 29942 (1974)) (remarks of Sen. Javits).

The number and diversity of the decisions dealing with the interaction between the Bankruptcy Code, ERISA, and various state laws fully justifies the Congressional fears.

**6.** The Ninth Circuit has concluded that state exemption laws for ERISA qualified plans *do* conflict with ERISA because the exemption results in a different disposition of those funds in bankruptcy. *Pitrat,* 947 F.2d at 427. Indeed, it believed the need to argue about pre-emption

tial furtherance of "ERISA's substantive requirements," is irrelevant in determining whether the law is pre-empted. *Mackey*, 108 S.Ct. at 2185.

▪ Applying the principles of pre-emption to the Indiana exemption statute, we first must determine if the statute "references" ERISA. If not, the next step is to determine if the law has a "connection with" qualified employee benefit plans. This requires the court to determine whether ERISA plans are "affected" by having been singled out or targeted for disparate treatment, regardless of whether the state law is consistent with ERISA's substantive provisions. *See Mackey*, 108 S.Ct. at 2185. If it is not, we then must consider if the statute falls within the sphere of ERISA. *Id.*

I.C. 34–2–28–1(a)(6) provides:

(a) The following property of a judgment debtor domiciled in Indiana is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

\* \* \* \* \* \*

(6) An interest the judgment debtor has in a pension fund, a retirement fund, an annuity plan, an individual retirement account, or a similar fund, either private or public. I.C. 34–2–28–1.

Although many states have enacted exemption laws protecting pension or retirement plans from the claims of creditors, few are as broadly written as Indiana's. The broad sweep of Indiana's exemption allows it to successfully pass the first test in the pre-emption challenge. The statute makes no reference to ERISA.

While the Indiana exemption makes no direct reference to ERISA, it is, nonetheless, "connected with" ERISA because ERISA qualified plans come within its scope. *Contra In re Garvin*, 129 B.R. 598, 601 (Bankr.S.D.Ind.1991) (The Indiana exemption "does not have a connection with

indicated that there was "some significant difference between the federal and state statutes."

an ERISA plan."). Although the statute does not single out ERISA plans for disparate treatment or burden plan administrators in any way, it does "affect" qualified employee benefit plans by extending its protection to them, in addition to other plans or funds having the characteristics of "a pension fund, a retirement fund, an annuity plan, an individual retirement account or a similar fund." I.C. 34–2–28–1(a)(6). Thus, the statute encroaches on that area encompassed by ERISA's sphere because ERISA qualified plans are included under the statute's protective umbrella.

Although the court concludes that the Indiana exemption has a "connection with" ERISA, this connection is not necessarily a fatal one. Despite such a connection, a law will be saved from pre-emption if it is "a state law of general application [that] affects employee benefit plans in too tenuous, remote, or peripheral a manner to be preempted." *Sommers Drug Stores*, 793 F.2d at 1467.

"There is a fundamental distinction between state laws of general application and state laws which specifically refer to benefit plans." *Dyke*, 943 F.2d at 1448. A law of general application is not, in any way, focused upon ERISA's sphere and has no impact upon the type of benefits which the plan must pay. Laws of general application must continue to apply, even though an ERISA plan or player may become involved, because ERISA plans and their various participants must co-exist in society along with a host of non-ERISA entities and the relations between them need to be governed by some type of rule or regulation. Although it would be theoretically possible to develop a completely independent body of federal law which would govern all possible interactions between ERISA and non-ERISA entities, it would be too cumbersome and counter-productive to do so. *Cf. Rebaldo v. Cuomo*, 749 F.2d at 138.

Laws of general application are designed to apply to the public at large, not simply

*Id.*

those within ERISA's sphere. As applied to exemptions, a law of general application "exempts many types of property and only indirectly affects qualified benefit plans." *Dyke*, 99 B.R. at 350, rev'd on other grounds, 119 B.R. 536, aff'd 943 F.2d 1435. It will be unfocused, in the sense that it is not in any way directed toward ERISA's sphere. *See Rebaldo*, 749 F.2d at 137 (a law of general application will not purport to regulate the terms and conditions of an employee benefit plan).

While the Indiana statute exempts only a few "types" of property, those "types," however broadly defined, all have certain similar characteristics, in that the asset must be in the nature of a pension, retirement, or "similar fund." Thus, the statute is specifically focused upon "ERISA's sphere" which encompasses the entire realm of employee benefit plans. Because all ERISA plans will inevitably fall within the "type" of fund defined by the statute, ERISA plans are *directly* affected. Given the specific nature of the "type" of asset targeted by the statute for exemption, we cannot conclude that it is a law of general application. Its impact upon ERISA plans is not tenuous, remote, or peripheral.

### B. 29 U.S.C. § 1144(d)

■ The debtor alternatively argues that even if the Indiana Statute is "related to" an employee benefit plan it is nonetheless saved from pre-emption pursuant to the ERISA savings clause, 29 U.S.C. § 1144(d). This section of ERISA provides in part:

> [n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law. 29 U.S.C. § 1144(d).

Pursuant to this section, the debtor contends that if I.C. 34–2–28–1(a)(6) is pre-empted by ERISA, then the state's power to opt out of the federal exemption scheme (11 U.S.C. § 522(b)(1)) is directly impaired

and, thus, pre-emption would modify or impair the Bankruptcy Code.

The Supreme Court interpreted the ERISA savings clause in *Shaw*, 103 S.Ct. 2890. In doing so, it faced the "difficult question" of whether pre-emption would impair non-ERISA federal law's reliance on state laws.[7] *See Shaw*, 103 S.Ct. at 2902 n. 22. The Court's decision is illuminating because it determined that the state laws in question were only *partially* pre-empted. It concluded that "to the extent that [a state law] provides a means of enforcing [the federal law's] commands", pre-emption would impair the federal law. *Shaw*, 103 S.Ct. at 2902. Where, however, the federal law did not command but was merely "neutral on the subject" pre-emption of state law would not impair the federal law. *Shaw*, 103 S.Ct. at 2903. Thus, the question is not simply whether non-ERISA federal law authorizes states to enact legislation in certain areas but, rather, whether or not the state legislation implements a specific federal mandate. "If ... not, the state law will be superseded...." *Shaw*, 103 S.Ct. at 2904. Thus, to be saved from pre-emption, state law must be identical to federal law, not merely permitted by it. *Cf. Pitrat*, 947 F.2d at 428. (Interpreting *Shaw* to mean those portions of state statutes that "duplicate[ ]" non-ERISA federal law are not preempted).

The debtor's argument that pre-emption of the Indiana exemption statute would impair the state's rights to opt out of the federal exemption scheme and thus impair the Bankruptcy Code, is premised upon the assumption that the Bankruptcy Code mandates the states to create specific exemption statutes. This simply is not so. There is a complete absence of an affirmative federal policy regarding what exemptions are available to a debtor under state law. Section 522 merely provides for federal exemptions and gives the states the *option* of opting out of the federal scheme by prohibiting its residents from taking advantage

---

7. The "simplistic 'double savings clause' argument" that the Court so quickly rejected, *see Shaw*, 103 S.Ct. at 2902 n. 22, is not applicable since the Bankruptcy Code contains no provision comparable to Title VII expressly preserv-

ing nonconflicting state laws. Even if it did, it is clear that such a provision will "not transform state ... laws into federal laws that § 514(d) saves from ERISA pre-emption." *Id.*

of the federal system of exemptions. Nothing in the Code prohibits a state from enacting a particular exemption or mandates it to create specific exemptions or even a particular level of exemptions. *See In re Golden,* 789 F.2d 698, 700 (9th Cir. 1986); *Matter of McManus,* 681 F.2d 353, 355 (5th Cir.1982); *Matter of Sullivan,* 680 F.2d 1131, 1136–1137 (7th Cir.1982); *In re Ondras,* 846 F.2d 33, 35–36 (7th Cir.1988); *In re Granger,* 754 F.2d 1490 (9th Cir. 1985); *In re Bartley,* 33 B.R. 768, 772–773 (Bankr.E.D.N.Y.1983); *In re Neiheisel,* 32 B.R. 146, 168 (Bankr.D.Utah 1983); *In re Goering,* 23 B.R. 1010, 1013 (Bankr.N.D.Ill. 1982). Indeed, at least theoretically, nothing in the Bankruptcy Code would prevent a state from denying its residents the benefits of the federal bankruptcy exemptions, by exercising its option to opt out of the federal scheme, and simultaneously abolishing all state exemptions—leaving a debtor with no exemptions whatsoever except those created under federal nonbankruptcy law.[8] *Owen,* 111 S.Ct. at 1835.

Where exemptions are concerned, the Code is neutral; it simply does not care whether or not a particular exemption exists or, even if it does, whether or not the debtor chooses to take advantage of it. *See* 11 U.S.C. § 522(b) ("an individual debtor *may* exempt ...") (emphasis added). In the face of this neutrality, the Indiana exemption is not saved from pre-emption. Pre-emption will no more impair the state's ability to opt out of the federal bankruptcy exemptions and to enact their own exemptions then pre-emption in *Shaw* impaired the state's ability to enact fair employment laws.

> The bankruptcy code, as a whole, is set up to operate independently of any state action. The bankruptcy code would not be impaired if there were no state law exemptions at all for it to enforce. Thus since the bankruptcy code can operate in a perfectly effective manner without any state law, it is not impaired by the failure of a particular state exemption law. *Pitrat,* 947 F.2d at 429 (footnote omitted).

Because the Indiana statute does not implement an affirmative federal mandate, pre-emption of the Indiana exemption statute does not impair the Bankruptcy Code within the meaning of 29 U.S.C. § 1144(d).

The Fifth Circuit recently addressed the ERISA saving clause in a bankruptcy context in *Matter of Dyke,* 943 F.2d 1435 (5th Cir.1991) and *Matter of Volpe,* 943 F.2d 1451 (5th Cir.1991). This court respectfully disagrees with its analysis and, although it is not bound by that court's conclusions, feels that it is appropriate to address its rationale. The Fifth Circuit determined that the Texas exemption statute was rescued from pre-emption by the ERISA savings clause. It interpreted *Shaw* to hold that "under certain circumstances ERISA also does not preempt *state* laws which enforce federal goals." *Dyke,* 943 F.2d at 1449. With this premise in mind, the court reasoned that the Texas exemption scheme advances the principal goal of the Bankruptcy Code and if the statute was pre-empted a debtor's ability to obtain a fresh start would be impaired. Therefore the court concluded that because the pre-emption of the statute "would 'modify' and 'impair' the enforcement scheme of the United States Bankruptcy Code," the statute was not pre-empted under ERISA. *Volpe,* 943 F.2d at 1452–53; *Dyke,* 943 F.2d at 1149.

There are several flaws in the Fifth Circuit's analysis of the issue, primary among them being its misinterpretation of the Supreme Court's decision in *Shaw.* The Court in *Shaw* was not concerned that pre-emption would, in some general sense, disrupt a combined state/federal enforcement scheme. Instead, it was only concerned that pre-emption would disrupt that scheme to the extent it addressed a *specific* federal mandate. *Shaw,* 103 S.Ct. at 2902–2903. To the extent that federal law was "neutral" as to a particular practice, the Court "fail[ed] to see how federal law would be impaired by pre-emption of a state law...." *Shaw,* 103 S.Ct. at 2903. It

---

**8.** Having said this, the court also recognizes that once a state has chosen to allow exemptions in certain property, it may not eliminate the debtor's right to avoid certain liens which impair that exemption by opting out of the federal exemptions. *See Owen,* 111 S.Ct. 1833.

remained true to this conclusion even though the state law in question was apparently consistent with the broader federal goal but where the practice in question was not specifically prohibited by federal law. Indeed, the Court specifically recognized that "interpretation of § 541(d) as requiring partial pre-emption of state fair employment laws may cause certain practical problems." *Shaw,* 103 S.Ct. at 2904. Despite this, it concluded that "these minor practical difficulties do not represent the kind of 'impairment' or 'modification' of *federal* law that can save a *state* law from pre-emption." *Id.* (emphasis original).

In applying the teachings of *Shaw* to the issue of bankruptcy and a debtor's exemptions, the Fifth Circuit focused solely upon the broader federal goal to "ensure ... that ... debtors can get a 'fresh start' after bankruptcy." *Dyke,* 943 F.2d at 1450. In doing so, it neglected to consider whether the state law in question implemented a specific non-ERISA federal mandate or involved only a practice upon which federal law was neutral. Thus, by focusing upon the goal—debtor's fresh start—rather than upon the specific practice—the state exemption—the Fifth Circuit misapplied *Shaw.* Since the Bankruptcy Code is neutral as to whether or not a particular exemption, or indeed any state exemptions, exists, a state exemption for a debtor's interest in an ERISA plan will not be saved from pre-emption, even though such an exemption might be consistent with the broad federal goal of promoting debtor's fresh start.

A further weakness in the Fifth Circuit's analysis is its emphasis on ensuring the debtor's fresh start as "[t]he principal goal of the Bankruptcy Code." *Dyke,* 943 F.2d at 1449. It overlooked the fact that the Bankruptcy Code is simultaneously pursuing two seemingly irreconcilable goals. While it is true that the Bankruptcy Code "enunciates a bankruptcy policy favoring a fresh start," H.R.Rep. No. 95–595. 95th Cong.2d Sess. 126 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087, while it is doing so it is also designed to distribute the debtor's assets to creditors. *See Union Bank v. Wolas,* — U.S. —, 112 S.Ct.

527, 533, 116 L.Ed.2d 514 (1991); *In re Britton,* 950 F.2d 602, 606 (9th Cir.1991). Neither goal is predominant; they co-exist and it is impossible to advance one without undermining the other. *See In re Greenberg,* 105 B.R. 691, 695 (Bankr.M.D.Fla. 1989) ("a basic underlying principle of the Bankruptcy Code is to balance the interest, albeit competing interest, between the creditors and the debtor."). Exemptions promote the fresh start by granting the debtor adequate possessions with which to begin life anew. To do so, however, the countervailing policy of distributing a debtor's assets to creditors must be sacrificed, because every dollar that a debtor is able to keep for itself, is a dollar which is not available for the payment of claims. The Fifth Circuit considered only the debtor's fresh start in its analysis of the purpose behind the Bankruptcy Code and the goals it is attempting to promote; it ignored the competing goal of paying creditors. Thus, to the extent *Shaw* may permit consideration of the goal sought by non-ERISA federal law in determining the issue of pre-emption, the Fifth Circuit omitted half of the bankruptcy equation.

The Fifth Circuit's reliance on the absence of any inconsistency between the state exemption and the federal exemption for pension plans, 11 U.S.C. § 522(d)(10)(E), is another flaw in its analysis. Under *Shaw,* the appropriate inquiry is not the absence of an inconsistency between the state law and the non-ERISA federal law; instead, the proper inquiry is the identity between the two. A law is not saved from pre-emption by § 1144(d) merely because it is an otherwise permissible state law. Instead, state law is saved because it also happens to be federal law, in the sense that both state and federal law address the same conduct in the same manner. "If ... not, the state law will be superseded." *Shaw,* 103 S.Ct. at 2904. This is, after all, only what § 1144(d) truly says—that ERISA does not pre-empt federal law. Thus state law is saved not because it is somehow permissible, appropriate, or consistent with some broader federal goal but, instead, because it is identical to a specific

federal mandate. *Cf. Pitrat,* 947 F.2d at 428–429. Were this not the case the "simplistic double savings clause" the Court commented on so disparagingly, *Shaw,* 103 S.Ct. at 2902 n. 22, would seem to have more merit.

It must be acknowledged that a state exemption for a debtor's interest in an ERISA plan is consistent with the theory behind § 522(d)(10)(E) because they both serve the same purpose. Nonetheless, consistence of purpose is not the proper inquiry; the proper inquiry is one of identity. The exemption permitted by § 522(d)(10)(E) is limited to that "reasonably necessary for the support of the debtor." Like the Texas exemption considered by the Fifth Circuit, Indiana's exemption is not limited by any amount whatsoever.[9] The Fifth Circuit was "unable to conclude that this difference is so significant that the state exemption is 'inconsistent' with the federal exemption." *Dyke,* 943 F.2d at 1450 n. 40. Assuming this to be true, they are not identical and "[i]f they are not, the state law will be superseded." *Shaw,* 103 S.Ct. at 2904.

Pre-emption of the Indiana statute would not modify or impair the Bankruptcy Code or its underlying policies. Given the Supreme Court's application of the savings clause, the neutrality of the Code with regard to specific exemptions and the broad scope of ERISA pre-emption, the pre-emption of the Indiana statute by no means modifies or impairs the Bankruptcy Code and, thus, the statute is not saved from pre-emption pursuant to 29 U.S.C. § 1144(d).

### III. *Conclusion*

The court's conclusion that the Indiana exemption is pre-empted is consistent with the purpose of the pre-emption clause itself. It helps to insure that plan administrators are not subject to a potentially conflicting scheme of state exemption laws which could render one debtor's interest in a pension plan exempt under the laws of one state and yet another debtor's interest in the same plan not exempt under the laws of a different state which had not enacted an exemption or which had adopted one which was not as generous. When this approach is then combined with a *Morter* "federal access test" under § 541(c)(2) questions concerning a trustee's right to administer a debtor's interest in an ERISA qualified pension plan will be released from the often conflicting state law spendthrift trust analysis and plan administrators will be subject only to a single nationwide standard. The ultimate issue will, thus, be freed from "the fortuitous influences that cause a state legislature to structure its statute in a particular way ... ensur[ing] uniformity of treatment of debtors who are similarly situated." *Matter of Seibert,* 914 F.2d 102, 106 (7th Cir.1990).

The Trustee's objection to debtor's claimed exemption will be sustained.

**9.** Judge Dees has determined that since "[t]here is no dollar limit" and it is not tied to the property "reasonably necessary for the support of the debtor and his family", the Indiana exemption violates Art. I, § 22 of the Indiana constitution. *Garvin,* 129 B.R. at 604. *Accord, In re Tveten,* 402 N.W.2d 551 (Minn.1987). This issue is not before the court.